536 So.2d 321 (1988)
Rickey JAGGERS, Appellant,
v.
STATE of Florida, Appellee.
No. 86-2344.
District Court of Appeal of Florida, Second District.
December 20, 1988.
*322 James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Jaggers was convicted and sentenced to three consecutive sentences of life in prison without eligibility for parole for twenty-five years on three separate counts of sexual battery perpetrated on three children under the age of eleven. Specifically, Jaggers was accused of vaginal digital penetration of his daughter and stepdaughter, Crystal Jaggers and Melissa Mitchell, and injuring the sexual organ of his niece, Erica Gibbs, in an attempt to penetrate her vagina, between and including October 1, 1984, and the month of September 1985. In this appeal, Jaggers challenges the judgment and sentences on various grounds.
First and foremost, we conclude that appellant is correct in that his motion for judgment of acquittal (directed verdict) on the two counts of sexual battery involving his daughter and stepdaughter should have been granted based on the posture of the case and the status of the evidence in the trial court. Appellant's appellate counsel charitably suggests that that issue involving *323 appellant's motion for judgment of acquittal may not have been adequately preserved below because appellant's trial counsel made too "general" a motion and, therefore, we are powerless to effect review of the issue absent fundamental error.
We do not agree that the motion below was too nonspecific or that we are powerless to review absent fundamental error. Appellant's motion below clearly stated that the motion was based upon the state's failure to "prove a prima facie case" of capital sexual battery. It is clear from the record that the trial judge and counsel for the state understood and approached consideration of the motion from the standpoint of whether the evidence was sufficient to prove the essential element, penetration of the alleged victims, so as to sustain the charges of capital sexual battery of children under the age of eleven years. We find that there was a total lack of reliable evidence to support the element of penetration in regard to the two counts of sexual battery involving appellant's daughter and stepdaughter. Fla.R.Crim.P. 3.380.
The principal incident leading to these charges occurred while Jaggers was bathing the three girls. The precise time that incident occurred cannot be more specifically determined than the time period alleged in the amended information. Jaggers' five-year-old niece testified at trial that Jaggers had touched all three girls "down there," referring to the vaginal area, while they were in the bathtub and that when he touched her "it hurt." She also related a similar incident involving Jaggers that occurred while she was lying on the bed or couch when she slept overnight at the Jaggers' residence. Sergeant Kuhn, a Pasco County deputy sheriff in charge of the juvenile division which handles crimes against children, investigated the sexual abuse allegations against Jaggers. She testified that Jaggers' niece told her, demonstrating through the use of an anatomically correct doll, that Jaggers touched the niece in a private area, pointing to the doll's vaginal opening. The niece's mother testified about her daughter's statement that Jaggers had placed his finger inside her "pee-pee" and that of Jaggers' stepdaughter.
The testimonies of Jaggers' daughter and stepdaughter were introduced at trial by means of their video taped depositions, conducted after a hearing pursuant to section 92.53, Florida Statutes (1985).[1] At that hearing, the trial court heard testimony from the guardian ad litem for the Jaggers children to the effect that it would be in the children's "best interests" to testify by means of video tape outside the presence *324 of Jaggers. The essence of the guardian's testimony was related to the influence being exerted by the children's mother, who consistently maintained her husband's innocence in front of the children. Although some reference was made by the guardian to reviewing a psychological report performed on the children, that report was apparently not introduced as evidence at the hearing and cannot be considered.
Immediately after hearing the guardian's testimony, the trial court entered a ruling that there was a substantial likelihood that these children would suffer at least moderate emotional trauma or mental harm if they were required to testify in open court. The defense counsel objected to the court's determination of trauma on the ground that it was not supported by any specific findings of fact as required under section 92.53(7). The court approved the video taping of the children's testimony stating that its finding of trauma was based upon the facts as testified to by the guardian. During the video taping, Jaggers was permitted to view the victims through a one-way mirror and hear their testimonies, but they in turn could not see or hear him. Jaggers, through his counsel, thoroughly exercised his right to cross-examine the witnesses at the depositions.
Appellant's four-year-old daughter and seven-year-old stepdaughter, through their testimony introduced by the state in its case in chief at trial by means of the video taped deposition, testified concerning an incident when all three children were in a bathtub together. The bathtub incident could not have taken place later than early May 1985. They testified only that appellant touched them in the vaginal area with his hand while they were bathing. The daughter and stepdaughter specifically testified that appellant did not penetrate the vagina with his finger, the only instrument of penetration urged by the state.
The stepdaughter's video taped testimony established that Jaggers touched the "privates" of all three girls with his finger, but she stated that Jaggers touched "around the hole but did not go inside." This testimony contradicted previous statements she had made in November and December 1985, to several persons including Sergeant Kuhn, Dr. Montemayor, a pediatric specialist, and Laura Kelley, a child abuse counselor. These witnesses testified, over appellant's objection, to prior statements made by Jaggers' daughter and stepdaughter that were consistent with vaginal penetration by Jaggers with his finger. During the course of the deposition, Jaggers' stepdaughter identified a drawing she had made during her interview with Dr. Crum, a child psychologist, which depicted the three girls in a bathtub and contained the writing, "[M]y daddy stuck his finger up my vagina."
Jaggers' daughter also denied any sexual abuse by Jaggers in her video taped testimony. Her testimony was directly contradictory to her earlier out of court responses to questions regarding the sexual abuse allegation against Jaggers. These responses included out of court statements she made to Dr. Montemayor and Sergeant Kuhn in November 1985, and to her grandmother, Mrs. Mitchell, in September 1985.
We conclude that the state's attempts to remedy the negative trial testimony by the daughter and stepdaughter on the issue of penetration with the unsworn, out of court victim statements that were themselves often contradictory and not made at a time closely approximate to the alleged occurence, were not sufficiently reliable to warrant admission into evidence. The time of the out of court statements, relative to the time of the incident charged and the circumstances of the statements, are critical to a determination of reliability. See Perez v. State, 536 So.2d 206 (Fla. 1988). That testimony, offered under section 90.803(23), Florida Statutes (1985), was relied on as substantive evidence. However, in this case, it amounts to nothing more than evidence of prior inconsistent statements of a testifying witness which are not admissible except when offered to contradict and to impeach the direct testimony offered at trial. We conclude that evidence of such prior unsworn, inconsistent statements, not subject to cross-examination *325 at the time they are made, cannot constitute the sole evidence upon which to sustain appellant's convictions of the sexual battery by penetration of his daughter and stepdaughter. State v. Moore, 485 So.2d 1279 (Fla. 1986). To hold otherwise would put us in conflict with Moore.
Moreover, we do not find the intent of section 90.803(23) is to allow the state to breathe substantive reliability into such prior inconsistent statements when they are otherwise admissible only to impeach those prosecuting victim witnesses whose testimony is introduced by the state at trial. Before it is admissible, evidence offered under section 90.803(23) must, like any other evidence, also comply with all applicable evidentiary rules of admissibility and purpose. The rule that prior inconsistent statements may not be used substantively as the sole evidence to convict (see Moore), applies to Section 90.803(23) evidence as well. Once the state introduced the exculpatory testimony, the inculpatory prior unsworn statements became prior inconsistent statements and should not have been allowed into evidence, in this case, for any purpose, and certainly not as substantive evidence. To allow the state to use as its sole evidence of the commission of the crime charged such prior unsworn, out of court statements which were not subject to cross-examination by the defendant, under the facts of this case violated appellant's sixth amendment right to confrontation and cross-examination. See Moore, 485 So.2d at 1282 (Overton, J., concurring specially); Everett v. State, 530 So.2d 413 (Fla. 4th DCA 1988). Moreover, to interpret section 90.803(23) otherwise would allow that section to be used to avoid the provision of section 90.608(1) that prohibits a party from impeaching his or her own witness. (The circumstances that provide an exception to that rule are not present in this case.)
There are a number of other significant problems with the state's use here of the daughter's and stepdaughter's out of court prior inconsistent statements. The first of those problems is that such statements may only be introduced after the trial judge makes specific findings of fact, on the record, to support his finding of reliability. § 90.803(23)(a)1 and (c), Fla. Stat. (1985). The trial judge made no such findings in this case. He merely recited into the record the boiler plate language of the statute in 90.803(23)(a)1. Moreover, even if he had made findings of "reliability" of the out of court hearsay statements, there appear to be serious problems with a trial judge determining such reliability of the out of court statements in the face of the directly contradictory in-court or video taped statements under oath and introduced at trial. It seems to place the trial judge in the position of determining the credibility of witnesses. Second, but no less significant, is the fact that as to appellant's daughter and stepdaughter, the out of court statements could only have been introduced if the children testified or were unavailable as witnesses. § 90.803(23)(a)2, Fla. Stat. (1985). There was no finding as to unavailability. The testimony of those two children at trial was by video taped deposition. While this court held in Glendening v. State, 503 So.2d 335 (Fla.2d DCA 1987), affirmed, 536 So.2d 212 (Fla. 1988) (Glendening I and Glendening II) that, under the circumstances there, such video tape testimony of a child witness was equivalent to personal testimony for the purposes of 90.803(23)(a)2, we have serious reservations concerning Glendening's applicability to the circumstances of this case.
Both Glendening courts seem to place great emphasis in reaching the conclusion they did on the fact that the trial judge was present at the video taping, and personally conducted a voir dire examination of the child to determine her competency to testify. In Glendening I, the court concluded regarding the child's video taped testimony that "[h]er testimony was taken before the court with participation by both attorneys just as it would have been had the child been physically present at trial." 503 So.2d at 340 (emphasis added). That was not the case here since the parties waived the presence of the judge at the video taping.
*326 We, therefore, conclude that the Glendening decisions do not apply to the circumstances of this case involving appellant's daughter and stepdaughter. Neither this court nor the supreme court in the Glendening decisions discuss, though the issue was apparently present in that case, the question of the propriety of using section 90.803(23) testimony to impeach the child victim's principal testimony offered by the state at trial. Section 90.803(23), by its clear language, seems intended as a means only for the state to offer such evidence.[2] Conversely, it seems to not have been the intent of the legislature in its utilization of the particular language of the statute to allow such use as substantive evidence when it is in contradiction of the principal testimony of the testifying child witness offered at trial by the state.
While the state offered, in addition to the daughter's and stepdaughter's out of court statements, expert testimony by a pediatrician to attempt to prove the element of penetration, that testimony was at best totally inconclusive, not diagnostically reliable, and derived from examination of the alleged victims months after the alleged occurrence. The pediatrician who examined the daughter and stepdaughter testified that her examinations revealed findings that were equally indicative of causes other than child abuse.
In addition, while an expert psychologist expressed an opinion that the children were psychologically sexually abused, he never defined exactly what is meant by "sexually abused," and whatever it might have meant to that witness, it would not support the missing element of penetration. There is not one scintilla of direct evidence produced at trial that this defendant ever penetrated with his finger the vagina of his daughter and stepdaughter at the time of the alleged offense as he was charged. We, therefore, reverse the convictions for sexual battery of his daughter and stepdaughter and order appellant discharged as to these offenses.
We do not conclude that the admission of the out of court statements of appellant's niece was similarly in error. The charge involving the niece did not require the element of penetration, but injury to her sexual organ from attempted penetration. Appellant's niece did not deny attempted penetration or injury from such attempt. The out of court statements of the niece were, therefore, not contradictory of her in-court statements and, upon a proper finding of reliability by the trial judge, would be properly admissible.
We do, however, conclude that there were other errors at trial that were prejudicial to appellant in regard to the charge against him that resulted in his conviction of sexual battery by injuring the sexual organ of his niece, Erica Gibbs, in an attempt to penetrate her vagina. While there is a minimum of evidence upon which a jury may have validly convicted appellant of that charge, we conclude that his conviction of sexual battery upon his niece may have been unduly influenced and tainted by the errors which we will identify.
Perhaps the most serious and prejudicial reason that requires reversal for a new trial on the sexual battery involving appellant's niece concerns the trial court's limitation of appellant's attempts to impeach through cross-examination a Williams Rule[3] witness, the relevance of whose testimony was questionable at best. That witness, a ten-year-old girl who was a cousin and a friend of the alleged victims, may have been the pivotal witness for the state in this case where the other evidence, reliable or otherwise, of appellant's guilt is nonexistent as to two of the charges and minimal in regard to the other. That ten-year-old witness testified to an incident that allegedly occurred three to five years *327 prior to her trial testimony in which she stated that appellant put his finger in her rectum. On cross-examination, appellant's counsel sought to ask that witness if she had not, on a previous occasion, charged her own father with a sexual assault on her and then later admitted the falsity of the charge against her father.
From the state's argument at trial in support of its objection to that cross-examination testimony, it appears that the state concedes that the witness did make such a charge against her father and then admit to its falsity. The trial court sustained the state's objection and refused to allow the attempted impeachment of that critical witness by the proffered testimony. That restriction on cross-examination was both erroneous and highly prejudicial. The state succeeded in persuading the trial court to restrict appellant's cross-examination on the basis of the very broad general principle of law that the credibility of a witness may not be impeached by proof that the witness has committed specific acts of misconduct, citing Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988); Hitchcock v. State, 413 So.2d 741 (Fla. 1982), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). See also §§ 90.608 and 90.609, Fla. Stat. (1985) and C. Ehrhardt, Florida Evidence § 801.6 (2d ed. 1984). However, for every broad general principle of law, there seems to be an exception applicable to particular circumstances. Section 90.405(2), Florida Statutes (1985) allows proof of specific incidents of conduct where that evidence is offered to prove a particular trait of character. In this case, that trait of character was that the witness may be inclined to lie about sexual incidents and charge people with those acts without justification.
There is a long line of authority from this court and others which permits the type of testimony on cross-examination that was prohibited here. Evidence that is relevant to the possible bias, prejudice, motive, intent or corruptness of a witness is nearly always not only admissible, but necessary, where the jury must know of any improper motives of a prosecuting witness in determining that witness' credibility. That is particularly true in the case of allegations of sexual abuse where there is no independent evidence of the abuse and the defendant's sole defense is either fabrication or mistake on the part of the alleged victims. McDuffie v. State, 341 So.2d 840 (Fla. 2d DCA 1977); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); Gamble v. State, 492 So.2d 1132 (Fla. 5th DCA 1986); Gonzalez v. State, 471 So.2d 214, 215 (Fla. 4th DCA 1985); Taylor v. State, 455 So.2d 562 (Fla. 1st DCA 1984); Brown v. State, 424 So.2d 950 (Fla. 1st DCA 1983). Three cases from this court are directly on point. Pollard v. State, 444 So.2d 561 (Fla. 2d DCA 1984); Russo v. State, 418 So.2d 483 (Fla. 2d DCA 1982); Williams v. State, 386 So.2d 25 (Fla. 2d DCA 1980).
In Pollard, the appellant was charged with lewd and lascivious assault upon a child. Pollard, on cross-examination, attempted to explore the victim's background in order to support his chief defense that the victim fantasized the incident as an attention-grasping event and fabricated the charge. The trial judge in Pollard prohibited Pollard from exploring the witness' background and this court reversed, holding that the testimony went to the possible bias or prejudice of the witness and was thus admissible and "particularly of consequence when the victim's testimony supplies all the essential elements of the offense." Pollard, 444 So.2d at 562. The same rationale should apply equally as much to a Williams Rule witness as it would to a victim of the crime charged, particularly where, as here, the Williams Rule witness provides critical, extremely prejudicial nonrelevant, nonsimilar incident evidence in a case that is, as discussed above, virtually devoid of reliable direct evidence.
In Russo, the defendant was charged with attempting to induce two persons to testify falsely in an impending trial. One of those persons testified against Russo to the effect that Russo had in fact offered to *328 pay him to testify falsely. Russo's counsel was prohibited from cross-examining that witness about that witness' own past attempts to testify falsely and to make himself unavailable in other litigation. This court reversed, holding that the witness' testimony "was so crucial to the state's case that omission of any evidence relating directly to his credibility was harmful and prejudicial to the defense." Russo, 418 So.2d at 484 (emphasis supplied).
Finally, in Williams, the defendant appealed her conviction for manslaughter after being tried for first degree murder. She urged that the trial court erred in not allowing her to attack the credibility of the state's chief witness by cross-examining that witness as to a false statement made to the police on a prior occasion not related to the charge for which the defendant was tried and convicted. This court reversed and held as follows:
The trial court erred in refusing to allow the defense to cross-examine Brown regarding her prior false statement to the police. Brown was the key prosecution witness because she was the only witness to the shooting other than Williams. Thus, her credibility was a crucial issue. In Stradtman v. State, 334 So.2d 100, 101 (Fla. 3d DCA 1976), approved, 346 So.2d 67 (Fla. 1977), the Third District Court of Appeal held:
[I]t is a well recognized rule that limiting the scope of cross-examination in a manner which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony constitutes error, especially where the cross-examination is directed to the key prosecution witness.

Accord, Morrell v. State, 335 So.2d 836 (Fla. 1st DCA 1976). We agree and hold that it was error for the court to refuse to permit defense counsel to impeach Brown's credibility by showing that she had lied to the police on a prior occasion. This right is particularly important in a capital case such as this where a defendant's right to cross-examine witnesses is carefully guarded, and limiting cross-examination on any matter plausibly relevant to the defense may constitute reversible error. Coxwell v. State, 361 So.2d 148 (Fla. 1978).
Williams, 386 So.2d at 26, 27 (footnote omitted). See also text and cases cited in 3A Wigmore, Evidence § 963 (Chadbourn rev. 1970).
We note also that here the evidence that this Williams Rule witness had made prior false charges of sexual abuse against her father is not collateral under these circumstances. The defense was attempting to impeach her, not with proof that she lied about what time she went to bed that night, but with proof that she had made previous false allegations of sexual abuse against her father, the very type of allegations she made against appellant at trial.
The second and final error which may have been so prejudicial to appellant as to influence the jury to convict him arises from an issue not first raised or addressed by the parties, but prompted by order of this court, which directed the parties to submit supplemental briefs addressing the effect, if any, of the recent decision of the United States Supreme Court in Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), on the case at hand. After a close reading of Coy and the record on appeal, we are compelled also to reverse Jaggers' conviction of the sexual battery of his niece, Erica Gibbs, and remand the case to the trial court for a new trial.
The United States Supreme Court decided Coy during the pendency of this appeal. The Court in Coy rejected the use of a screen at trial to block the child witness' view of the accused defendant, finding that such a procedure violated the sixth amendment's confrontation clause. Because the testimony of appellant's daughter and stepdaughter were presented at his trial by means of their video taped depositions, which were conducted through a one-way mirror separating the children from Jaggers, we direct our attention to the impact of the Coy decision upon this case. We do so even though we reverse his convictions involving the daughter and stepdaughter for a lack of evidence to convict because we *329 cannot separate the possible impact of that procedure from his conviction for the sexual battery of his niece.
Recently, the Florida Supreme Court upheld the constitutionality of section 92.53, the Florida statute permitting such protected testimony, noting that the United States Supreme Court in Coy was careful to point out "that rights conferred by the Confrontation Clause are not absolute, and must give way to other important interests." Glendening v. State, 536 So.2d 212 (Fla. 1988) (Glendening II) (quoting Coy, 108 S.Ct. at 2802). In Coy, the United States Supreme Court, in striking down the confrontation procedure utilized there, stated that:
[S]omething more than the type of generalized finding underlying such a statute [Iowa] is needed when the exception is not "firmly ... rooted in our jurisprudence." Bourjaily v. United States, 483 U.S. 171, ___, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987) (citing Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)). The exception created by the Iowa statute, which was passed in 1985, could hardly be viewed as firmly rooted. Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception.
Id. 108 S.Ct. at 2803.
The policy behind section 92.53 is for the purpose of shielding child witnesses from the trauma of courtroom testimony in cases where substantial likelihood of trauma has been specifically found by the court after a proper hearing. It is this requirement of individualized findings under section 92.53, which the Florida Supreme Court in Glendening II found distinguished this statute from the generalized statute assailed in Coy. In so holding, the Glendening II court recognized that the policy of protecting child victims of sexual abuse from probable trauma in a given case qualified as such an important public policy of the type acknowledged in Coy.
Although there is no constitutional infirmity with the procedures outlined under section 92.53, those procedures were not properly followed in this case. A review of the record reflects that the trial court did not make the required findings of fact under section 92.53(7) necessary to support its determination that the two child witnesses, whose testimonies were video taped, would suffer at least moderate emotional or mental harm if they were required to testify in open court. Such a case-specific finding mandated by section 92.53 is precisely what renders that statute constitutional, because the statute is closely tailored to protect the child victim only in those particular circumstances were it is deemed necessary.
As stated previously, the trial court did not set forth the specific basis for finding that the daughter and stepdaughter would suffer moderate emotional trauma by testifying at the trial against Jaggers. All the court stated was that its decision was based on the testimony of the guardian ad litem for the children.
The only testimony before the trial court in this regard was a statement by the guardian ad litem, who was not qualified with any expertise, that "it would be in the best interest of the children for them to testify by way of video tape." That not only comes nowhere near complying with Coy (which admittedly was not available to the trial judge since it was decided after the trial below), but also does not comply with the requirement of section 92.53, that the court make a finding of a substantial likelihood of moderate trauma in order to shield such a witness and deprive a defendant of his sixth amendment right to confrontation. A finding by the trial court of "moderate trauma" without any evidence to support that finding cannot prevail. There was no psychological or other testimony to show what effects, if any, those statements had on the children, nor regarding their emotional ability to testify at trial. Because the trial court failed to set forth reasons supported by evidence in the record which led to the finding of trauma, the video taped testimony, properly objected to, should not have been allowed since it failed to comply with the statute. Nor is this error subject to the test of harmlessness, *330 recognized in Coy, since the remaining evidence in the case is not overwhelming, and we cannot determine beyond a reasonable doubt that the error did not contribute to Jaggers' convictions on all counts. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). We have no means of discerning the effect that this testimony may have had upon the jury in reaching its verdict on all three charges because of the constitutional ramifications of a failure to abide by section 92.53 with regard to Jaggers' fundamental right to confront his accusers. See Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982).[4] In this case, even though the video taped testimony of the daughter and stepdaughter, offered by the state, was favorable to defendant since both children denied the essential element of penetration of their bodies by appellant, we are unable to find a lack of prejudice to appellant from the possible effect on the jury of the use of such protected testimony. After all, these witnesses were appellant's daughter and stepdaughter. By their protected video taped testimony, they denied an essential element of the charges against appellant. Why then shield these witnesses from sight of appellant and thereby create a possible improper influence by inference on the jury that these children were afraid of their father? Does that inference of fear create in the jury a thought that the children may be falsely testifying under oath when they exonerate their father, but on the other hand, told the truth in their unsworn out of court statements? Does that implication carry over to the charge involving appellant's niece? By their verdict, that appears to be what the jury believed.
Child abuse is a horror that must be eliminated from our society with as little further damage to the child victims as possible. While we are vitally concerned about the abuse of children and the need to protect those tender lives from the further trauma of the courtroom, we must also be concerned with the duty of the courts to assure that a person accused of such a crime be assured of a fair and impartial trial. When there is a substantial issue, as in this case, not as to the identity of the perpetrator of the crime, but whether or not the charged crime in fact occurred, we must look with microscopic vision at not only the substance of the evidence presented but at the manner in which the evidence may be prejudicially directed toward guilt or innocence by the manner in which it is allowed to be presented or the extent to which it may be withheld. Under the circumstances of this case, we are convinced that in balancing the due process rights of appellant and the possible harm, if any, to the victims by requiring their confrontation with appellant, or strict compliance with Coy and section 92.53, the rights of appellant must prevail.
We must, therefore, also reverse appellant's conviction and sentence for the sexual battery upon his niece, Erica Gibbs, and as to that charge, remand for a new trial. The convictions and sentence for the other charges against appellant are reversed and he shall stand acquitted of those charges.
CAMPBELL, C.J., and LEHAN, J., concur.
PARKER, J., Specially concurs in part and dissents in part.
PARKER, J., specially concurring in part and dissenting in part.
I concur with the decision of the majority to reverse the Jaggers' conviction for sexual battery upon the niece for a new trial only partially on the grounds relied upon by the majority. I also respectfully dissent in regard to the acquittal of Jaggers on the two convictions for capital sexual battery involving the daughter and stepdaughter on the basis of lack of reliable evidence to prove the element of penetration.
First, I do not reach the question of whether the evidence at trial was sufficiently *331 reliable to establish penetration as to these two victims, since there was no defense motion for judgment of acquittal specifically addressing the state's failure to prove penetration. After the presentation of the state's evidence, Jaggers, as he conceded on appeal, merely made a general motion for judgment of acquittal, which the trial court denied.
In appealing an error of the trial court in the denial of a motion for judgment of acquittal, the specific ground relied upon in assigning error must be advanced in the trial court to preserve the point for appellate review. Johnson v. State, 478 So.2d 885 (Fla.3d DCA 1985); Cornwell v. State, 425 So.2d 1189 (Fla. 1st DCA 1983). In Johnson, the district court rejected the defendant's argument in that case that the trial court erred in denying a defense motion for judgment of acquittal as to the count alleging sexual battery of a child eleven years of age or younger, on the ground that the state failed to prove the victim's age was within the statutory range. The court in Johnson held that defense counsel's use of a "general `boilerplate' motion in which he asserted, without explanation or argument, that the state had failed to prove `a prima facie case' of the crime charged ..., which counsel then tracked as to each element, including age" failed to comply with Florida Rule of Criminal Procedure 3.380(b). Rule 3.380(b) requires that any motion for judgment of acquittal fully set forth the grounds upon which it is based.
During the discussion which transpired on the record upon Jaggers' motion for judgment of acquittal, no reference was made regarding the state's failure to prove the element of penetration. The sole argument posed by Jaggers was that the state had not established "`a prima facie case' of capital sexual battery as to all three girls." In contrast to the majority opinion, I find this general statement was not sufficient to preserve the issue of the sufficiency of proof of penetration for purposes of this appeal.
In that same vein, Jaggers argues for the first time on appeal that the only evidence presented by the state proving penetration of the daughter and stepdaughter were the victims' prior out-of-court statements, which, standing alone, cannot support these two convictions. See State v. Moore, 485 So.2d 1279 (Fla. 1986). Intermingled with that argument, Jaggers maintains that the state should not have been allowed to impeach its own witnesses by introducing their prior inconsistent statements. In contrast to the majority, I can find no merit in either contention. While it is correct that Moore prohibits the state from proving its case against a defendant solely on the basis of prior inconsistent statements, the Moore holding does not apply in the situation, such as here, where there is some competent corroborative evidence of the crimes aside from the statements. See Chambers v. State, 504 So.2d 476, 478 (Fla. 1st DCA 1987).
The medical testimony presented in this case was supportive of a finding of digital vaginal penetration of the Jaggers children. Dr. Montemayor's examination of Jaggers' daughter and stepdaughter revealed that their vaginal openings were consistent with penetration by a finger. In the case of the stepdaughter, the vaginal area could admit a small adult-sized finger, and the daughter's vaginal area permitted a finger tip to be inserted. According to Montemayor, redness appearing in the vaginal areas of both children also indicated a possible low-grade infection that could be consistent with digital penetration or fondling. Based upon an examination conducted by Dr. Crum, a psychologist, he concluded that in his opinion the stepdaughter and the niece had been sexually abused. Dr. Crum was unable to evaluate the four-year old daughter because she showed a high degree of anxiety and was uncooperative.
Contrary to the view expressed by the majority, I believe that the medical testimony and the niece's testimony regarding the other two victims comprised sufficient evidence to corroborate the out-of-court statements establishing digital vaginal penetration of the Jaggers children. See Chambers. Because I do not find the out-of-court statements to be the only evidence *332 of penetration, I disagree with the majority that "to hold otherwise would place us in conflict with Moore."
The majority further disapproves of the trial court's admission of these out-of-court statements introduced under section 90.803(23) on various grounds. Initially, the majority concludes that the intent of section 90.803(23) was not to allow these statements, which are contradictory to two of the victims' testimonies at trial, to be used as substantive evidence in the state's case. After a careful reading of the statute, I cannot discern any such intent that would prohibit the state from introducing these statements as substantive evidence in its case, rather than solely as impeachment evidence as the majority suggests. Although I agree with the majority that the inconsistent statements would not be admissible for purposes of impeaching the state's own witnesses, see § 90.608(1), Fla. Stat. (1985), these statements were nonetheless admissible as substantive evidence of these offenses (although not as the sole substantive evidence, Moore) under section 90.803(23), Florida Statutes (1985), which was the purpose for their introduction by the state. Although one may question the decision of the state to introduce the exculpatory video taped testimonies of the Jaggers children, which was contradictory to the section 90.803(23) statements, nothing in that statute indicates a contrary intent, as proposed by the majority, than to allow admission of these out-of-court statements as substantive evidence to prove the acts of abuse.
Next, the majority concludes that the trial court did not make the proper findings of reliability of the out-of-court statements as required under section 90.803(23)(a)1 and (c). Unlike the majority, I do not reach this issue because it is not properly before this court. No objection was raised to these statements on this point at trial, nor has this issue been briefed by the parties on appeal.
The majority also disapproves of the introduction of these statements on the ground that no determination was made that the Jaggers children were unavailable to testify at trial and that their video taped testimony could not be equated with their being present to testify at trial as required under section 90.803(23)(a)2. The supreme court in Glendening, 536 So.2d at 216, unequivocally held that video taped testimony of a child witness is the equivalent of testifying in open court for purposes of satisfying the requirement of testifying under section 90.803(23)(a)2 necessary for the introduction of the hearsay statements. No exceptions were drawn by the supreme court to that holding, and I decline to adopt the majority's attempt to do so in this case.
As in Glendening, the attorneys for the parties were present at the video taping as was Jaggers, and defense counsel had ample opportunity to cross-examine the witnesses. It also appears from the record that a special master was appointed by the court to be present at the video taping to make any necessary rulings. Therefore, the distinction sought to be made by the majority, i.e., that a judge was not present at the video taping, does not appear to be consistent with the supreme court's holding in Glendening.
While for the reasons which I have previously stated I dissent from the acquittal of Jaggers on the two sexual batteries pertaining to the daughter and stepdaughter, I agree with the majority's reversal of the niece's conviction because I also find error in the trial court's application of section 92.53, Florida Statutes (1985), to the case at hand. I adopt in full the majority's analysis of the Supreme Court's Coy decision as it applies to the present circumstances. The record in this case is devoid of the specific findings of trauma required under section 92.53 to withstand constitutional scrutiny. Based on the Coy analysis, I would reverse the convictions of the daughter and stepdaughter who testified by video tape and remand the case for a new trial. Also, because of the possible prejudicial effect of this impermissible video taped testimony of the Jaggers children on the niece's conviction, as explained by the majority, I concur in the decision to reverse that conviction for a new trial.
Since we are directing that a new trial be held as to the charge involving the niece, I *333 must address the following evidentiary point on which I disagree with the majority. This point involves the testimony of a Williams rule witness who was a friend of the Jaggers children regarding a prior incident of sexual abuse by Jaggers.[1] According to this child, the incident occurred while she was sleeping overnight at the Jaggers household. She related that Jaggers came into the room where she was sleeping and placed his finger in her rectum, but that she did not tell anyone about the incident for two years. Jaggers then attempted to elicit testimony from this witness that five or six years earlier she had accused her father of sexual abuse, which she later recanted. The trial court refused to permit this type of impeachment evidence. According to the majority, the exclusion of this impeachment evidence was sufficiently prejudicial to warrant reversal of the niece's conviction even aside from the error attributable to Coy. On this, I differ from the majority.
Generally, the credibility of a witness may not be attacked by proof that she committed specific acts of misconduct which bear on her truthfulness. Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988); Hitchcock v. State, 413 So.2d 741 (Fla. 1982), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). See also §§ 90.608 and 90.609, Fla. Stat. (1985) and C. Ehrhardt, Florida Evidence § 801.6 (2d. ed. 1984). Section 90.608(1)(c), Florida Statutes (1985) provides that the character of a witness is subject to attack in accordance with the provisions of section 90.609, which states that "[a] party may attack or support the credibility of a witness, including an accused, by evidence in the form of reputation."
The defense here did not seek to attack the credibility of this witness by her reputation in the community as a person that makes sexual abuse allegations and later withdraws those allegations. Instead, the defense sought to elicit from the witness on cross-examination a specific instance of misconduct on her part as to that character trait. Section 90.405(2) specifically limits the use of character evidence by means of specific instances of conduct to those circumstances in which the character trait of the person sought to be established is an essential element of the charge, claim, or defense. In the present situation, the character trait of this Williams rule witness for fabricating sexual abuse allegations is not an essential element to prove the sexual abuse charges against Jaggers or his defense to those charges. Had this type of cross-examination evidence been elicited from one of the three victims, i.e., that they had fabricated a similar sexual abuse claim in the past, it would have been admissible since it would be essential to proving Jaggers' defense of fabrication by these victims. I, therefore, can find no abuse of discretion in the trial court's exclusion of this character type evidence. See LeCroy v. State, 533 So.2d 750 (Fla. 1988) (the trial court has wide discretion in ruling on admissibility of evidence). Nor do I find that this impeachment evidence was probative of any motive, bias, or intent on the part of this witness and therefore also was not admissible on those grounds. See § 90.608, Fla. Stat. (1985). I am not persuaded by the majority's contrary position on this evidentiary point, and I would not reverse the niece's conviction on that basis.
Since I find that the trial court's failure to abide by section 92.53 in the introduction of the video tapes should be the sole basis for deciding this case, I would reverse all three convictions against Jaggers for sexual battery and remand the case to the trial court for a new trial.
NOTES
[1] The relevant portions of the statute are as follows:

92.53 Sexual abuse or child abuse case; videotaping of testimony of victim or witness under age 16. 
(1) On motion and hearing in camera and a finding that there is a substantial likelihood that a victim or witness who is under the age of 16 would suffer at least moderate emotional or mental harm if he were required to testify in open court or that such victim or witness is otherwise unavailable as defined in s. 90.804(1), the trial court may order the videotaping of the testimony of the victim or witnesses in a sexual abuse case or child abuse case, whether civil or criminal in nature, which videotaped testimony is to be utilized at trial in lieu of trial testimony in open court.
... .
(4) The defendant and the defendant's counsel shall be present at the videotaping, unless the defendant has waived this right. The court may require the defendant to view the testimony from outside the presence of the child by means of a two-way mirror or another similar method that will ensure that the defendant can observe and hear the testimony of the child in person, but that the child cannot hear or see the defendant. The defendant and the attorney for the defendant may communicate by any appropriate private method.
... .
(6) The motion referred to in subsection (1) may be made at any time with reasonable notice to each party to the cause, and videotaping of testimony may be made any time after the court grants the motion. The videotaped testimony shall be admissible as evidence in the trial of the cause; however, such testimony shall not be admissible in any trial or proceeding in which such witness testifies by use of closed circuit television pursuant to s. 92.54.
(7) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this section.
[2] Section 90.803(23)(a) requires the statement be that of "describing any act of child abuse, sexual abuse or any other offense involving an unlawful sexual act... ." In other words, it is evidence that tends to prove an act of abuse and thus clearly is for the sole benefit of the state. In addition, section 90.803(23)(b) provides for notice of intent to use such statements only to a defendant.
[3] Williams v. State, 110 So.2d 654 (Fla. 1959), codified at section 90.404(2)(a), Florida Statutes (1985).
[4] In Proffitt, 685 F.2d at 1227, the right to confrontation was equated with the right to counsel, "which are considered fundamental minimum requirements of a fair trial comporting with the due process clause." (Citations omitted.) "So basic is the right that the Supreme Court has held that its denial ... `would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" (Citations omitted.)
[1] This similar fact evidence was apparently admitted as proper Williams rule evidence. Although the record does not disclose the basis for that ruling, we caution the trial court that if objected to in a subsequent trial, this evidence may not be introduced to prove propensity of Jaggers to commit acts of sexual abuse against children but only may be admitted if relevant to prove a material fact at issue, such as motive, intent, opportunity, plan, preparation, identity, knowledge, or lack or mistake or accident. See § 90.404(2), Fla. Stat. (1985).