WENTWORTH, Senior Judge.
This is an appeal of a judgment of conviction and sentence for two counts of sexual battery by appellant Henry Lee Clay upon his daughters, involving penetration digitally as to R.R., then aged three and a half, and by penis as to K.C., her two and a half year old sister. We affirm, finding as to the only two issues presented here that the trial court (1) did not abuse its discretion in admitting in evidence a videotape of R.R. pursuant to § 90.803(23),[1] Florida Statutes, and (2) did not err in denying a motion for judgment of acquittal based on insufficiency of evidence of identity.
Appellant expressly abandons any challenge of the determination of R.R.’s unavailability as a witness at trial for lack of testimonial competence, based on interview by the court as well as opinion evidence of her limited understanding. The initial contention here, instead, is that the child’s testimonial incompetence should result in inadmissibility of the videotape for unreliability. Clearly that is not the case as a matter of law. Perez v. State, 536 So.2d 206, 211 (Fla.1988), cert. den., 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599 (Fla.1989).[2] We find appellant’s further factual arguments as to alleged inconsistencies in the child's responses were carefully and properly evaluated by the trial court in denying the motion in limine to exclude the videotape. No constitutional confrontation issue was then raised or preserved, as to which Perez is dispositive in any event. The argument with respect to alleged absence of corroboration, also not specifically raised by the motion in limine, is treated in connection with the second issue and requires some factual detail.
About 9 p.m. on September 4, 1989, appellant returned his daughters to their ba *845 bysitter, 14-year-old Michelle McQueen, after their customary weekend residence with him and their mother. Michelle and her sister began to bathe K.C., who started to scream upon being washed in the vicinity of her genitalia. Michelle’s mother examined K.C. and found a white substance in and around her vagina. At trial, Mrs. McQueen testified that the white substance resembled “dusting cream” used on babies. After a telephone call from the McQueens to the children’s maternal grandfather, the children’s grandmother came for the children that evening and took them to a hospital for examination.
A pediatrician testified that K.C. and R.R. exhibited some unusual physical findings which were suspicious. He indicated that compared to the many thousands of girls he has examined, these two were highly unusual. Although their external genitalia were normal in appearance and showed no tears, their hymenal openings or dilations were twice the size that the doctor normally saw. He said the opening is usually under four or five millimeters, but both girls’ measured eight or nine millimeters. The doctor explained that the hymen is usually a fairly prominent structure but in these girls there was only a thin rim of hymenal tissue, about a one or two millimeter rim. He further explained that the victims’ condition was not conclusive or “diagnostic” of full penile penetration, but when asked his opinion as to the chance of whether the children had been sexually abused he replied that, on a scale of one to ten, he would say “probably a seven” that something had happened.
The case coordinator for the Child Protection Team was present at the medical examination and took photographs, admitted in evidence, depicting generally the described conditions as well as showing dark marks on K.C.’s inner thigh. The ease coordinator later interviewed R.R. by videotape. During the interview, R.R. stated that “my daddy touched me on my tummy,” the child’s word for vagina. Using anatomically correct dolls, R.R. showed how her father touched her in the vaginal opening. She then stated without specific inquiry that, “He touched my sister Further responses were, “my sister’s clothes were off because my daddy took them off,” and “this weekend was when he touched us [Labor Day Weekend].” R.R. then took the boy and girl dolls’ clothes off and put the boy doll on top of the girl, stating that the boy doll was “daddy” and the girl doll was K.C. She said that daddy was “pushing” on K.C. on her “mommy’s bed,” and that “mommy was at work.” R.R. put the penis of the boy doll in the vagina of the girl doll. [K.C.].
Appellant’s motion for judgment of acquittal was addressed to “both counts based on identity.” (e.s.) The contention was that R.R.’s videotaped statements were uncorroborated and therefore insufficient to convict under the rule that prior unsworn and uncorroborated hearsay cannot constitute the sole evidence for conviction. State v. Moore, 485 So.2d 1279 (Fla.1986); Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988).
Appellant argues the state did not prove identity because the evidence shows that, in addition to calling her father (appellant) “daddy,” as well as “Lee,” the child also at times called Mr. McQueen and her grandfather “daddy.” However, the child victim specifically stated, “This weekend [Labor Day] was when he [my daddy] touched us.” R.R. then said her daddy was “pushing” K.C. on her “mommy’s bed, while mommy was at work.” The record establishes that appellant and the children’s natural mother had the children over Labor Day weekend, the weekend in which the child indicated the events occurred. The record also shows that the children’s natural mother worked nights while her husband had a day job. The parents had the children from Friday, September 1 until Monday night at about 9:00 p.m., when appellant and his sister-in-law returned the children to the McQueens. About 15 minutes later the babysitters found a white substance in and around K.C.’s vaginal area while bathing the children, and called to Mrs. McQueen in the adjacent bedroom. The babysitters, who regularly cared for the children during the week, testified that they had never before seen this substance on the children. Mrs. McQueen had not gone to her job over the Labor Day weekend.
*846 We conclude that appellant failed to adequately establish that the videotaped statements were fatally inconsistent either internally or with evidence presented at trial. In contrast with Jaggers, supra, and Williams v. State, 560 So.2d 1304 (Fla. 1st DCA 1990), on which appellant relies, the children were not able to testify at trial, and no issue is presented here as to that fact or as to the exclusion of a proferred defense videotape of R.R. which apparently contained statements in conflict with portions of the tape admitted in evidence. Expert testimony presented only on the motion in limine referenced a recantation of dubious character by R.R. at the time of an interview shortly before trial. Even assuming the rule in Moore, supra, properly applies to hearsay within the explicit admissibility provisions of § 90.803(23), and further assuming (contrary to our record examination) that inconsistent statements on identity were presented, we find the videotaped statements here in question to be sufficiently corroborated by the totality of the recited evidence above.
Affirmed.
ERVIN and WIGGINTON, JJ„ concur.

. 90.803 Hearsay exceptions; availability of declarant immaterial. — The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence....
(23) HEARSAY EXCEPTION; STATEMENT OF CHILD VICTIM OF SEXUAL ABUSE OR SEXUAL OFFENSE AGAINST A CHILD.—
(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse, sexual abuse, or any other offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
2. The child either:
a. Testifies; or
b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense.
[[Image here]]
(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection, (e.s.)

. There the court held that a determination of reliability based on time, content and circumstances "furnishes a sufficient guarantee of trustworthiness of the hearsay, obviating the necessity that the child understand the duty of a witness to tell the truth" in order to permit videotape admissibility under § 90.803(23), Fla. Stat.