804 So.2d 564 (2002)
Willie J. BAKER, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-9.
District Court of Appeal of Florida, First District.
January 18, 2002.
Nancy A. Daniels, Public Defender and David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Robert R. Wheeler, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Willie J. Baker appeals his conviction for committing a sexual act with a child under the age of 16 in violation of section 800.04(3), Florida Statutes (1997). He contends that the trial court erred in denying *565 his proffered evidence that the victim had falsely accused others of sexual crimes against her in the past. Because the undisputed evidence in the record establishes that appellant admitted having sex with the victim, we find any such error would be harmless beyond a reasonable doubt and we affirm.
Investigator Haire of the Gadsden County Sheriff's Office received an abuse report from the Department of Protective Services that the victim, D.A., who was 15 years old, had been forced by appellant, her brother-in-law, to have sexual intercourse with him. Investigator Haire interviewed appellant and took a recorded statement from him. The following are excerpts from that statement:
INVESTIGATOR HAIRE: D.A. had said that you had forced her to have sexual intercourse with you two times. Is this true?
MR. BAKER: Yes.
INVESTIGATOR HAIRE: It is true?
MR. BAKER: We started off playing around and it led to other things. And it led around to it. But, didn't nothing happen. I couldn't do it.
* * *
INVESTIGATOR HAIRE: Okay. And inside the house there you said you got to playing around. Start from the beginning and tell me what all happened.
MR. BAKER: Well, we started playing around with one another and one thing led to another. And it got down to where I tried to have sex with her. I couldn't. I couldn't do it.
* * *
INVESTIGATOR HAIRE: What kind of clothes? What was she wearing?
MR. BAKER: I can't remember exactly. I believe she had onI believe she had on jeans. Had jeans, I think. I'm not sure about it.
INVESTIGATOR HAIRE: And she pulled those down to try to have sex with you?
MR. BAKER: Uh-huh.
INVESTIGATOR HAIRE: But, because of your condition, you said you weren't able to have sex?
MR. BAKER: I wasn't able.
INVESTIGATOR HAIRE: How old is she?
MR. BAKER: I think she's 15.
INVESTIGATOR HAIRE: Okay. Let's see. Her date of birth is in January. So I guess she would have just turned 15. Had you ever had sex with her?
MR. BAKER: Yes.
INVESTIGATOR HAIRE: Now, she saidshe mentioned two times. Was there a second time?
MR. BAKER: No.
* * *
INVESTIGATORY HAIRE: When you were playing around with D.A. that day, did you intend for something like that to happen?
MR. BAKER: No.
INVESTIGATOR HAIRE: Did it just get out of hand or what?
MR. BAKER: It did. I would say it got out of hand, just got out of hand.
Prior to trial, the trial court heard argument on whether appellant should be permitted to introduce evidence that, in the past, the victim falsely accused males who were in a custodial relationship with her of having had sex with her. The state argued that such evidence was irrelevant as it constituted an impermissible attack on the victim's credibility. The trial court delayed ruling on the matter, commenting that defense counsel should proffer the evidence before it was sought to be admitted and at that point the trial court would rule on its admissibility.
*566 The victim testified that one night at her sister and brother-in-law's trailer, when her sister had gone with a friend to a nightclub, appellant came over to her while she was lying on the couch and began touching her. He took her to the bedroom where he had sex with her using a condom. She testified that appellant placed his penis inside her vagina.
After the victim testified, defense counsel proffered certain cross-examination testimony about past instances in which the victim had falsely accused several male relatives of attempting to have sex with her. Defense counsel argued that the testimony was relevant to the victim's credibility and her veracity because "she's admitted here that at least on two occasions she accused people of having had sex with her when, in fact, that did not occur." In response, the state argued that the evidence was not relevant because appellant had admitted attempting to have sex with the victim. The state argued that evidence of specific instances of misconduct could not be used to attack the credibility of the victim. The trial court excluded the testimony from evidence. Similarly, the trial court refused to allow the testimony of several of the victim's relatives about these false accusations. Appellant's wife, along with others, did testify that the victim's reputation for truthfulness in the community was bad.
Appellant did not testify nor did he cross-examine Investigator Haire regarding the reliability of the recorded statement. Defense counsel argued to the jury in closing that the state failed to prove beyond a reasonable doubt that defendant caused his sexual organ to penetrate or have union with the victim's vagina. Further, he argued that the victim was not a credible witness and that her testimony was the only testimony of physical contact between the appellant and her "and if you find that the victim is unreliable in that respect, then your verdict should be not guilty."
The jury returned a verdict finding appellant guilty as charged. He was sentenced to nine years in prison to be followed by three years probation.
Section 800.04 provides in pertinent part:
A person who:
* * *
(3) Commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years; ...
* * *
without committing the crime of sexual battery, commits a felony of the second degree, ...
Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.
Section 794.011(1)(h) defines sexual battery as follows:
(h) "Sexual battery" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; ...
Under this statute, sexual battery can be accomplished either by union or penetration. Seagrave v. State, 26 Fla. L. Weekly S481, S484, n. 7 (Fla. July 12, 2001). In Seagrave, the court approved the analysis of the Second District Court of Appeal in Richards v. State, 738 So.2d 415, 418 (Fla. 2d DCA 1999) that "the term `union' and the term `penetration' are used with some precision. Union permits a conviction based on contact with the relevant portion of anatomy, whereas penetration requires some entry into the relevant part, however slight." Id. To sustain a conviction for sexual battery, it is not necessary for the state to prove that the defendant completed the act of sexual intercourse by *567 "emission." Barker v. State, 40 Fla. 178, 24 So. 69 (1898).
Further, the crimes of sexual battery and lewd and lascivious conduct are mutually exclusive. Hausen v. State, 730 So.2d 327, 328 (Fla. 5th DCA 1999). As the supreme court pointed out in State v. Hightower, 509 So.2d 1078, 1079 (Fla. 1987), "section 800.04 contemplates that if sexual activity takes place with a person under sixteen years of age which does not constitute the crime of sexual battery, the conduct is deemed to be lewd and lascivious." Consensual intercourse with an unchaste fifteen year old constitutes the crime of lewd and lascivious conduct. See id.
Under sections 90.609 and 90.610, Florida Statutes, the character of a witness may be impeached by evidence of reputation for truthfulness or by evidence of criminal convictions. While it is generally true that, other than evidence of prior convictions under section 90.610(1), credibility may not be attacked by proof that the witness has committed specific acts of misconduct which bear on the truthfulness of the witness, Fernandez v. State, 730 So.2d 277, 282 (Fla.1999), the Second District Court of Appeal has recognized an exception to this rule permitting impeachment with prior acts of misconduct that involve prior false accusations of a crime by the witness. See Cliburn v. State, 710 So.2d 669, 670 (Fla. 2d DCA 1998)(in burglary prosecution, when only witnesses were the victim and the defendant, who was a former boyfriend, it was reversible error to prohibit cross-examination of the victim as to whether she had filed a false police report on a prior occasion against another boyfriend); Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988)(witness who testified about similar sexual acts with the defendant could be impeached with her prior false accusation of sexual assault, the court reasoning that the evidence showed the bias, prejudice and motive of the witness); Williams v. State, 386 So.2d 25 (Fla. 2d DCA 1980)(murder defendant could attack the credibility of the prosecution witness by asking her whether she had lied to the police on a prior occasion); see generally Charles W. Ehrhardt, Florida Evidence § 610.8 at 511 & n. 6 (2001 Ed.).
However, even if we were to adopt the Second District's false accusation exception and hold that the trial court erred in excluding the testimony concerning prior false accusations by the victim, a decision we do not reach, under the undisputed facts in the record before us, any such error was harmless beyond a reasonable doubt. See Goodwin v. State, 751 So.2d 537 (Fla.1999). Here, the records shows that appellant admitted twice that he had sexual intercourse with the victim. In view of this undisputed evidence, we find that any error in excluding the testimony concerning the victim's prior false accusation did not influence the jury's deliberation. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986)("The focus [of a harmless error analysis] is on the effect of the error on the trier of fact.").
Appellant's defense was not that sexual contact did not occur. Rather, his defense appears to be that, while he tried to have sexual intercourse with the victim, he could not consummate the act. However, as discussed above, penetration is not necessary because the charged crime occurs upon "union" or touching. See Seagrave, 26 Fla. L. Weekly at S484, n. 7. Further, appellant never argued to the jury that he was guilty only of an attempted lewd and lascivious act. Thus, while the exclusion of the evidence of the victim's past false accusations of sexual crimes might have constituted reversible error if appellant had denied the charged sexual contact, where the *568 defendant has admitted the criminal act, whether the victim has falsely accused others in the past is of no moment under the record before us. Cf. Cliburn, 710 So.2d at 669 (erroneous error in refusing to permit evidence casting doubt on victim's credibility was harmless as to defendant's conviction for violating domestic violence injunction where the defendant admitted that violation).
AFFIRMED.
DAVIS, J., CONCURS, ERVIN, J., DISSENTS WITH WRITTEN OPINION.
ERVIN, J., dissenting.
I cannot agree with the majority's decision that the exclusion of the proffered testimony regarding the victim's tendency to fabricate accusations of sexual offenses was harmless under State v. DiGuilio, 491 So.2d 1129 (Fla.1986). In my judgment, the trial court erred in excluding the proffered evidence and such error, under the circumstances of this case, was not harmless. I therefore respectfully dissent.
Turning first to the question of whether the trial court erred by excluding the proffered testimony regarding the victim's prior false accusations, an issue the majority declines to resolve on the merits, I conclude that the court's ruling was indeed error. Admittedly, the general rule is that credibility may not be attacked by proof that a witness has committed specific acts of misconduct that bear upon the witness's truthfulness. Rather, sections 90.609 and 90.610, Florida Statutes (1997), permit the character of a witness to be impeached by evidence of reputation for truthfulness or by evidence of criminal convictions. An exception to this rule exists, however, permitting impeachment of a witness by use of a prior false accusation of a crime by the witness. See Charles W. Ehrhardt, Florida Evidence § 610.8, at 511 & n. 6 (2001 ed.). This exception is illustrated in Cliburn v. State, 710 So.2d 669 (Fla. 2d DCA 1998); Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988); and Williams v. State, 386 So.2d 25 (Fla. 2d DCA 1980).
In Cliburn, the defendant was charged with burglary of his former girlfriend's apartment. The case boiled down to a swearing match between the two, with the former girlfriend testifying that Cliburn entered her apartment before she returned home, and Cliburn saying he waited outside the apartment until she arrived home and invited him inside. Cliburn sought to cross-examine the former girlfriend regarding the fact that she had previously made a false kidnaping charge against a different former boyfriend, but the court excluded that evidence. Based on Jaggers and Williams, the Second District court found this limitation to be error, and it reversed the conviction and remanded for new trial.
Jaggers, which involved three sexual battery convictions involving child victims, provides more analysis than Cliburn. In that case, the prosecutor presented a Williams-rule[1] witness to testify regarding a similar sexual incident between herself and the defendant some three to five years before the charged crimes. The defendant was not permitted to cross-examine the witness about a false accusation of sexual assault she had previously made against her own father. The Second District found that restriction to be both erroneous and highly prejudicial. Although noting that impeachment may not, as a general rule, be based on specific acts of misconduct, the court noted an exception *569 to that rule which allows, based on section 90.405, Florida Statutes, specific incidents of conduct to be offered to prove a particular character trait. In that case, the character trait described was the witness's inclination to lie about sexual incidents and charge people with those acts without justification. Jaggers, 536 So.2d at 326. The court also noted that evidence relevant to possible bias, prejudice, motive, intent or corruptness of a witness is nearly always admissible, but also necessary for the jury in determining credibility. In reversing, the court also relied on Williams.
In Williams, the defendant was charged with first-degree murder, and there was a conflict in the testimony between Williams and Brown, the only other witness to the shooting. Williams attempted to cross-examine Brown about a prior occasion during which she had lied to the police. The court excluded the proffered evidence, and the Second District reversed. In so doing, the court relied on Stradtman v. State, 334 So.2d 100, 101 (Fla. 3d DCA 1976), approved, 346 So.2d 67 (Fla.1977), wherein the Third District held:
[I]t is a well recognized rule that limiting the scope of cross-examination in a manner which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony constitutes error, especially where the cross-examination is directed to the key prosecution witness.
Williams, 386 So.2d at 27.
The majority declines to follow this line of cases, however, based on its factual conclusion that "appellant admitted twice that he had sexual intercourse with the victim" and that this statement was "undisputed evidence." Supra p. 567. I cannot agree with those characterizations.
The majority's above conclusions concern the taped statement appellant gave to the police. Review of the transcript of that statement, in toto, shows that appellant was equivocal, at best, in admitting his culpability. Although he at first acknowledged having sexual intercourse with the victim twice,[2] he later stated, as the majority's opinion reveals, that as to the only act for which he was charged, "nothing happen[ed]." He later denied any involvement in the second reported act. Moreover, appellant never admitted in the statement either union or penetration with the relevant portions of the victim's anatomy. Although appellant did not testify at trial that his taped statement was incorrect or somehow unreliable, by entering a "not guilty" plea, he denied every material allegation in the information[3] and thereby implicitly disputed this evidence. Thus, this is not a case, as the majority concludes, in which appellant conclusively admitted having sex with the victim.
Appellant was, in fact, charged with a sexual act on a child under the age of 16, a second-degree felony in violation of section 800.04(3), Florida Statutes (1997). Attempt was not charged, but rather was included in the lower court's charge to the jury as a category 2 lesser-included offense based upon evidence that appellant was unable to have intercourse with the victim.
Given the equivocal nature of appellant's statements regarding his culpability, and the fact that the only other evidence of guilt was the victim's testimony, we can *570 only speculate as to whether the jury would have reached the same result, or whether it would have returned a verdict for the lesser offense, if the court had permitted the defense the opportunity to submit evidence showing that the victim had falsely accused others of having sex with her. I am therefore of the firm belief that it is impossible to determine from an examination of this record the existence of harmless error.
For the above reasons, I would reverse appellant's conviction and remand the case for new trial with directions that the proffered evidence be admitted.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959) (codified at section 90.404(2)(a), Florida Statutes (1997)).
[2] This so-called admission may have actually been an acknowledgment by appellant that the victim had accused him of having intercourse with her twice, rather than an actual admission of having done so.
[3] See Fla. R.Crim. P. 3.170(e); Licata v. State, 81 Fla. 649, 88 So. 621 (1921).