704 So.2d 569 (1997)
Calvin Gary BARTON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-535.
District Court of Appeal of Florida, First District.
July 29, 1997.
*570 Nancy A. Daniels, Public Defender; Fred Parker Bingham II, Assistant Public Defender, Office of the Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Trisha E. Meggs, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, Judge.
Calvin Gary Barton, the defendant, appeals his conviction for capital sexual battery. In support of his argument for reversal, the defendant challenges the sufficiency of the evidence and the correctness of a series of evidentiary rulings. We conclude that the evidence was sufficient and therefore reject the defendant's argument on that point, but we agree that the defendant has shown reversible error as to several of the evidentiary rulings preserved for review. Consequently, we reverse for a new trial.

I.
The state charged the defendant by information with the offense of capital sexual battery. According to the information, the defendant committed a sexual battery on M.W., a female child under the age of twelve, between April 1 and April 7, 1995, by placing his finger in the child's vagina. The defendant entered a plea of not guilty and the case was scheduled for a jury trial.
Before trial, the state filed a motion to present the victim's testimony to the jury by videotape. A dispute arose concerning the defendant's presence during the videotaping of the testimony. The guardian ad litem for the victim argued that the defendant should be excluded, but the defendant objected to this procedure and asserted his right to be present during the testimony in his case. When this issue was first considered by the trial court, the state proffered the testimony of Kathleen Kouis, a child therapist intern with Nassau County Community Services. Kouis expressed her opinion that the child was anxious about formal proceedings and that the child had a propensity to "decompensate emotionally" when discussing the allegations.
At a subsequent hearing, defense counsel objected to the videotaping on the grounds that Kouis was unqualified to testify as an expert; that there was no evidence of a substantial likelihood that the child would suffer moderate emotional or mental harm due to the defendant's presence if required to testify in open court; and that the state had not met its burden under section 92.53, Florida Statutes. Following the second hearing, the trial court granted the state's motion to videotape, stating that it found a "sufficient showing" to allow videotaping.
The victim's testimony was videotaped before trial in the presence of another judge, Chief Judge Donald Moran. Before the testimony began, Judge Moran questioned the victim to determine her competency to testify. At the trial before Judge Bill Parsons, the defense objected to the admissibility of the videotaped testimony of the victim, contending that her competency to testify had not been sufficiently established. The trial court admitted both the tape and the transcript, ruling that Judge Moran had previously "made the determination" of competence.
In another pretrial hearing, the trial court considered the admissibility of certain hearsay statements by the victim, and the admissibility of evidence of an offense against another child. The state had served notice of intent to introduce evidence of a series of hearsay statements by the victim, one to her stepmother, a second to Sergeant Hazel Crow during a police investigation, and a third to nurse Diane Larson during a medical examination. Likewise, the state had served notice of intent to introduce evidence that the defendant had committed a sex offense against S.Y., another female child. This hearing resulted in a ruling favorable to the state on both issues. The court held that all of the hearsay statements were admissible, and that the state could present evidence of the offense against the other child, as well.
At trial, the victim testified by videotape that the defendant lived in her neighborhood *571 and that she would occasionally go to his house. She said that the defendant "touched her in her privates," that he gave her money, and that this had happened at least ten times. When questioned directly about the issue of penetration, the victim said that she did not know whether he put his fingers inside of her.
The victim's stepmother testified that she began to ask questions when she discovered two twenty dollar bills in the victim's backpack. Although the victim was not truthful about the money at first, she eventually told her stepmother that the defendant had given her money and that he had touched her in her private parts. Sergeant Crow of the Nassau County Sheriff's Department interviewed the victim shortly after the discovery of the twenty dollar bills. According to Sergeant Crow's testimony at trial, the victim said that the defendant had touched her in a nasty way. The victim explained to Crow that the defendant had "put his finger in her and it made her hurt."
Diane Larson, an OB-GYN nurse, examined the victim and related her findings in a videotaped deposition which was presented to the jury. Larson said that her examination of the victim's vaginal area revealed scarring of the hymen that was consistent with penetration by an object. She could not identify the object by its size or type but she was sure that the injury could not have resulted from a fall or by some event other than penetration.
Over a renewed objection by the defense, the state was allowed to present the testimony of another child, S.Y., regarding an offense committed against her several years earlier. The child testified that the defendant fondled her chest in 1992 or 1993 at a time when she was present in his home. She said that the defendant had given her money and that he had told her not to tell anyone.
At the close of the state's case, the defendant moved for a judgment of acquittal contending that the evidence was insufficient to support a conviction for capital sexual battery. The court denied the motion and the defendant took the witness stand in his own defense. He acknowledged that the victim had been to his house but he denied that he had touched her or that he had given her money. The jury found the defendant guilty as charged and the court imposed a sentence of life imprisonment with a minimum term of twenty-five years.

II.
The defendant contends that the evidence was insufficient to sustain his conviction for capital sexual battery because the state failed to prove the essential element of penetration. We reject this argument. The element of penetration was established by the victim's statement to Sergeant Crow that the defendant "put his finger in her and it made her hurt" and corroborated by the testimony of Nurse Larson who said that the physical examination of the victim's vaginal area revealed evidence of blunt penetration.
In reviewing the sufficiency of the evidence in a criminal case, the court must determine "whether after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment." Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981). Penetration is one of the elements that must be proven in a prosecution for capital sexual battery under section 794.011(2)(a), Florida Statutes. J.W.C. v. State, 573 So.2d 1064 (Fla. 5th DCA 1991), but evidence of the slightest penetration will suffice. Pride v. State, 511 So.2d 1068 (Fla. 1st DCA 1987). Moreover, as we explained in Davis v. State, 569 So.2d 1317 (Fla. 1st DCA 1990), "evidence of injury to external female parts of the victim may be sufficient circumstantial evidence of penetration." In the present case, the state presented testimony of digital penetration, in a statement introduced under section 90.803(23), Florida Statutes, as well as corroborating physical evidence.
The defendant contends, citing State v. Green, 667 So.2d 756 (Fla.1995), and Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988), that penetration cannot be established by an inconsistent and uncorroborated hearsay statement offered in evidence under section 90.803(23), Florida Statutes. This is a correct *572 statement of the law, but the facts in Green and Jaggers are distinguishable. The victim in Green testified at trial that the defendant was not the man who had committed the sexual battery against her, and the prosecution then attempted to prove its case by introducing the victim's pretrial statements in which she had identified the defendant as her assailant. The supreme court held that the defendant's conviction could not be based on the inconsistent statement alone. Likewise, in Jaggers, the state attempted to prove a sexual battery case with an inconsistent pretrial statement when the victim testified at trial that the defendant had not penetrated her vagina with his finger. The court reversed on the ground that the conviction could not rest on the inconsistent hearsay statement.
Although the victim in the present case testified at trial that she did not know whether the defendant had penetrated her, she did assert, as she had previously, that the defendant touched her in her vaginal area. The defendant's argument that the victim's trial testimony is inconsistent with the statement she previously gave to Sergeant Crow expects too much of a nine-year-old child. The victim's response at trial may have been caused by a lack of memory or by a reluctance to discuss the event in greater detail, but it is not necessarily inconsistent with her earlier statement to the officer.[1]
Sergeant Crow testified at trial that the victim had told her the defendant "put his finger in her and it made her hurt." This testimony further explains the victim's trial testimony that the defendant touched her in her vaginal area at a time when she was unclothed. Furthermore, the victim's statement to Sergeant Crow is corroborated by Nurse Larson's testimony that the scarring in the victim's vaginal area could only have been caused by a form of blunt penetration of the vagina. On this evidence, a jury could reasonably conclude that the defendant penetrated the victim's vagina with his finger as alleged in the information.

III.
Alternatively, the defendant seeks a new trial based on several alleged evidentiary errors. The first of these is the defendant's claim that the trial court failed to make the required findings to support the presentation of the victim's testimony by videotape. Section 92.53, Florida Statutes, provides that the testimony of a child under sixteen may be presented by videotape if there is a "substantial likelihood" the child will suffer "at least moderate emotional or mental harm due to the presence of the defendant if the child ... is required to testify in open court." Subsection (7) of the statute requires the court to make specific findings of fact on the record as to the basis for a ruling allowing a child to testify by videotape. As the defendant says, the findings in the present case do not address the potential emotional or mental harm to the victim.
The state maintains that the defendant has waived the right to contest the adequacy of the trial court's findings under section 92.53, Florida Statutes, because the issue was not preserved for review. We agree. Although the defendant objected under section 92.53 during the hearing on the state's motion to videotape the victim's testimony, the objection was not renewed at trial when the testimony was offered. The objection at trial was based entirely on another ground; that is, the court's failure to determine whether the victim was competent to testify as a witness.
The supreme court held in Feller v. State, 637 So.2d 911, (Fla.1994), that the failure to make findings under section 92.53(7), Florida Statutes is not fundamental error. In Feller, as in the present case, the defendant failed to renew his objection to the adequacy of the trial court's findings. The supreme court concluded that the objection made before trial was not sufficient, and that the defendant's *573 failure to renew the objection at trial was a waiver of the right to argue the point on appeal. The rule in Feller requires us to reach the same result here.

IV.
We agree with the defendant that the trial court erred in several other rulings pertaining to the admission of evidence. Before we address these points, though, we must acknowledge that in rejecting the defendant's argument on the sufficiency of the evidence we have relied in part on evidence we also find was improperly admitted. These conclusions are not inconsistent. When an appellate court determines that the evidence presented in a criminal trial is insufficient as a matter of law, the prohibition against double jeopardy prevents retrial and the only proper remedy is to reverse with instructions to enter a judgment of acquittal. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); McArthur v. Nourse, 369 So.2d 578 (Fla.1979). It does not follow, however, that the defendant is entitled to a judgment of acquittal merely because evidence that is critical to the court's finding of sufficiency was improperly admitted.
As the United States Supreme Court explained in Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the double jeopardy clause does not prohibit a retrial following an appeal if the appellate court has determined that some of the evidence was improperly admitted, and if the remaining evidence would not be sufficient to support the conviction. Distinguishing its decision in Burks, the Court held that procedural errors in the admission of evidence do not require an acquittal even if that evidence is crucial to the sufficiency of the government's case against the defendant. The Court's reasoning is best illustrated in the following passage of the opinion:

Burks was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary `trial errors' as the `incorrect receipt or rejection of evidence.' (citation omitted) While the former is in effect a finding `that the government has failed to prove its case' against the defendant, the latter `implies nothing with respect to the guilt or innocence of the defendant,' but is simply `a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect.' (citation omitted) (emphasis in original).
Lockhart v. Nelson, 488 U.S. at 40, 109 S.Ct. at 290.
Some procedural errors, such as the failure to establish a predicate for the admission of evidence or the failure to make required findings to justify the admission of evidence, might be corrected on remand and, if that is the case, the same evidence may be used again. Consequently, the appellate courts must consider the sufficiency of the evidence and alleged trial errors separately.

V.
The defendant contends that the trial court erred in failing to find that the victim was competent to testify as a witness. Judge Moran, who presided over the videotaping, questioned the victim concerning her competence and ability to understand the duty to tell the truth before swearing her in and beginning her videotaped testimony.[2] However, *574 Judge Moran did not make a finding that the victim was competent at the time she gave her videotaped testimony. When defense counsel renewed his objection at trial, the trial court (Judge Parsons) responded as follows:
Let me simply say that I was not present. The chief judge covered that for me in Jacksonville so that the two of you might use facilities that we don't have available in Nassau County. My general impression is that he asked whatever questions he thought were appropriate to determine competency and I am not going to secondguess that. I am going to determine that he made the determination.
The trial court has broad discretion to determine whether a child is competent to testify as a witness, Griffin v. State, 526 So.2d 752 (Fla. 1st DCA 1988), but the decision is one that must be announced on the record and it must be supported by findings of fact. Z.P. v. State, 651 So.2d 213 (Fla. 2d DCA 1995). In the present case Judge Moran questioned the witness but made no finding that she was competent. Judge Parsons accepted this without making any further inquiry or findings. Under these circumstances, we conclude that the trial court abused its discretion in its apparent determination that the witness was competent to testify.

VI.
The defendant also contends that the trial court should have excluded evidence of a collateral offense against another child. Section 90.404(2), Florida Statutes, provides that collateral crime evidence may be admitted when relevant to prove a material fact in issue such as "motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident." A special rule also allows evidence of a collateral offense in limited circumstances to corroborate the testimony of a child. In Heuring v. State, 513 So.2d 122 (Fla.1987), the supreme court held that evidence of a collateral sex offense against another child in a familial setting is admissible to corroborate the testimony of the victim. Subsequently in State v. Rawls, 649 So.2d 1350 (Fla.1994), the court extended this principle to collateral offenses committed outside the family context, provided that the identity of the accused is not in issue. In Rawls, the court defined the phrase "familial relationship" broadly to include cases in which the child has a bond of trust or in which the defendant has some form of parental authority.
The admissibility of collateral crime evidence is measured by a different standard if the offense was committed against a child in a familial relationship. In such cases, the relationship itself may be considered as one of the points of similarity between the charged offense and the collateral offense. Saffor v. State, 660 So.2d 668 (Fla.1995). This rule applies only if the defendant was in a familial relationship with both the victim of the charged offense and the victim of the collateral offense. See Charles W. Ehrhardt, Florida Evidence, § 404.18 (1997) If at least one of the offenses was committed outside of a familial relationship, the collateral offense must bear a higher degree of similarity to the charged offense. Rawls.
Applying these principles, we conclude that the evidence of the collateral offense against the child, S.Y., was improperly admitted. S.Y. testified that the defendant had fondled her chest while she was in his bedroom and that he had given her money for it. She said that this had occurred about three years earlier when she was ten years old, that the defendant was her regular babysitter, and that she had been in his house every day for *575 nearly two years. The victim in the present case lived in the defendant's neighborhood, but the defendant had no business or personal relationship with the victim's family. Although S.Y. was arguably in a familial relationship with the defendant as defined in Rawls, the same cannot be said of the victim of the charged offense. Moreover, we cannot say that the two offenses were sufficiently similar to meet the test of admissibility in a nonfamilial case. One involves digital vaginal penetration and the other involves fondling of the breast area. Although the defendant gave the children money in each case, that is the only additional point of similarity. The collateral offense against S.Y. proves no more than the defendant's propensity to commit offenses of the same general type, an issue expressly prohibited by section 90.404(2), Florida Statutes.

VII.
Finally, the defendant contends that the trial court failed to make adequate findings concerning the reliability and admissibility of out-of-court statements of the child victim pursuant to § 90.803(23), Florida Statutes. The standard of review regarding the trial court's decision as to the reliability and admissibility of hearsay testimony under § 90.803(23) is one of abuse of discretion. Perez v. State, 536 So.2d 206 (Fla.1988), cert. denied, 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599 (1989); Garcia v. State, 659 So.2d 388 (Fla. 2d DCA 1995). On the authority of Hopkins v. State, 632 So.2d 1372(Fla.1994), we conclude that the trial court abused its discretion in determining that the victim's statements were reliable and therefore admissible under section 90.803(23), Florida Statutes.
At first, the trial court merely repeated the language of section 90.803(23) in admitting the proffered testimony of Sergeant Crow and Cheryl Whitley as to the hearsay statements the victim made to them. This conclusory finding, made in the language of the statute, was not adequate. Hopkins. In response to an objection by the defense as to the sufficiency of the findings, the court stated that it found that "the statements to [the child's stepmother] were made on a one-onone exchange with the child in the home of [the stepmother] and that the statements to Hazel Crow were shortly thereafter under similar, private, communicative circumstances." In this second finding, as well, the court did not conclude that the statements were reliable. Nor did the court identify the facts that would support such a determination.
As the supreme court explained in Hopkins, the failure to make specific findings of reliability as mandated by section 90.803(23) "ignores the clear directive of the statute" and "also implicates the defendant's constitutional right to confrontation." The court had previously held in State v. Townsend, 635 So.2d 949, 954 (Fla.1994) that, in order to admit an out-of-court statement under § 90.803(23), "(1) the source of the information through which the statement was reported must indicate trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." (emphasis in original). It appears from the trial court's ruling that it considered the fact that the child was speaking in her home indicated reliability. However, it is impossible to determine from the record that the court relied on much else other than the nature of the conversations between victim and her stepmother and Sergeant Crow as "private" and "one-on-one" in determining their reliability. These findings are insufficient under Hopkins.

VIII.
In summary, we conclude that the evidence was sufficient to sustain the conviction, but that the trial court erred in failing to make a finding that the victim was competent to testify as a witness, in failing to make adequate findings supporting the use of hearsay testimony of the victim, and in allowing evidence of a collateral crime by the defendant. Because we cannot say that these errors were harmless, we must reverse for a new trial.
Reversed and remanded.
MINER and ALLEN, JJ., concur.
NOTES
[1] An inconsistency between a section 90.803(23) hearsay statement and the victim's trial testimony does not affect the admissibility of the statement in any event. While reaffirming the general principles in Green regarding the sufficiency of the evidence in a criminal case, the court in Department of Health and Rehabilitative Services v. M.B., 701 So.2d 1155 (Fla.1997), held that a section 90.803(23) hearsay statement may be admissible in evidence even if the statement is not consistent with the victim's trial testimony.
[2] The dialogue was as follows:

Q: (by the Court): [M.W.], you know the difference between a truth and a lie, don't you?
A (by M.W.): Uh-huh (affirmative).
Q: Okay. Have you ever told lies?
A: (No verbal response.)
Q: Well, have you?
A: I don't know.
Q: Well, the reason I ask you is because you are not allowed to tell lies in this kind of hearing; do you understand that?
A: Uh-huh (affirmative).
Q: So it is pretty important. It is something we want to make sure you understand, so do you understand that?
A: Uh-huh (affirmative).
Q: Can you promise me you will tell the truth if we can [sic] you any questions today?
A: Uh-huh (affirmative).
Q: Do you know what it means to take an oath?
A: (No verbal response).
Q: It's kind of like a promise. You know what it is to promise something don't you, it means you can't violate your promise. If you take an oath, you say, I promise that I'll do something, like I will promise to tell the truth, and that is what I will ask you to do. Do you think you can do that?
A: (No verbal response.)
Q: All right. Well, will you promise me, [M.W.], that you will tell the truth of any questions that are asked?
A: Uh-huh (affirmative.)
Q: If you don't want to say anything that is fine, but I don't want you to tell a lie, okay?
A: Uh-huh (affirmative).
Q: Can you promise me you will do that?
A: (Shakes head negatively.)
Q: Can you promise me that you will not tell a lie?
A: (Nods head affirmatively.)
Q: Okay. That is what we are asking you to do.