723 So.2d 860 (1998)
James Oliver GRIFFITH, Appellant,
v.
STATE of Florida, Appellee.
No. 97-963.
District Court of Appeal of Florida, First District.
November 30, 1998.
Nancy A. Daniels, Public Defender; Judith Dougherty Hall, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Kristina White, Assistant Attorney General, Tallahassee, for Appellee.
WOLF, J.
James Griffith appeals from a final judgment and sentence after his conviction for capital sexual battery on a child under the age of 12. Appellant raises three issues, two of which merit discussion: Whether the trial court erred by admitting evidence of collateral crimes, and whether the trial court erred in permitting a child abuse counselor to testify to a prior hearsay statement. We find that the trial court erred in admitting collateral crime evidence where there was a total lack of similarity between the charged crime and the collateral crimes. We also find that had the issue been properly preserved, we would be required to reverse due to the improper admission of the prior hearsay statement by the victim without any factual findings which would support that the "circumstances of the statement provides sufficient safeguards of reliability...." See §§ 90.803(23)(b) and (c), Fla.Stat. (1997).

Collateral Crimes
R.F. testified that when he was nine years old (in 1992), the appellant had been left to babysit with him for three days while his parents took a trip. The witness testified that the appellant sexually abused him during that time. The sexual abuse occurred inside the victim's house and involved anal penetration by appellant's penis.
In 1995 while investigating allegations against the appellant for sexual abuse of two girls ages eight and ten, Deputy Braband discovered that the appellant had been accused of a sexual incident against a young *861 boy, R.F., in 1992. Braband testified that during his second interview with appellant, which was tape recorded, appellant confessed to the two incidents with the young girls and also admitted to the offense against R.F. At appellant's trial for capital sexual battery against R.F., the state was permitted to put on the testimony of Deputy Braband that appellant confessed to the sexual incidents with the young girls and also confessed to the sexual incident involving R.F. Braband's testimony before the jury was as follows:
Q What did Mr. Griffith admit to you that he had done?
A He admitted to me that he had taken the eight-year-old child down to the end of the garden at a friend's house where they were living at the time, that he had removed the child's underwear, that he had inserted his finger in her vagina and that he had removed his penis and had the child masturbate him until he had ejaculated.
Q How about the other little girl, what did he tell you about that?
A He admitted to me that he had fondled the child inside the house on top of her clothes. He had said thator admitted that he rubbed the child's vagina through her shorts and that he had rubbed her chest.
Q Did you have an occasion during this taped interview to question Mr. Griffith, the defendant, about any acts that may have occurred with a person by the name of R.F.?
A Yes, sir, I did.
Q What did youwhat did the defendant tell you?
A I asked the defendant if he had done this kind of thing with any other children? And initially he had told me no. I asked him then specifically about R.F. and the incident which I had prior knowledge of.... He says, "Well, I was drinking." I says, "Well, I understand you may have been drinking," I says, "but you remember what happened, don't you?" I said, "Look, I know this is difficult for you. Let me help you. I don't want to put words in your mouth." I said, "I don't want to tell you something that didn't happen." I says, "And correct me if I'm wrong, but is this not really what happened?" I said, "Did you not take the boy's pants down and lay him on the floor and attempt to stick your penis in his anus?" He said, "Yes, but I was drinking." I said, "But that's what you did, isn't it?" He said, "Yes, it is."
The Williams rule[1] has been codified at section 90.404(2)(a), Florida Statutes (1997), and reads as follows:
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
In Morrow v. State, 717 So.2d 93, 23 Fla.L. Weekly D1893 (Fla. 1st DCA 1998), we recently explained the law concerning admissibility of crimes in a situation involving sexual abuse of children where the charged crime involved abuse in a familial or custodial setting, as in the instant case, and the collateral crimes were committed outside the familial context:
Evidence of other crimes or acts is admissible if it is found to be relevant for any purpose, save that of showing bad character or propensity. See Williams; § 90.404, Fla.Stat. (1997). Section 90.404, which codified the holding in Williams, provides that similar fact evidence of other crimes, wrongs, or acts may be admitted when relevant to prove a material fact in issue such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In limited circumstances, the testimony of a child victim may be corroborated through evidence *862 of a collateral offense. See Heuring v. State, 513 So.2d 122 (Fla.1987) (providing for such corroboration in cases where the offenses occur in a familial context); State v. Rawls, 649 So.2d 1350 (Fla.1994) (extending the principle announced in Heuring to collateral offenses committed outside the familial context). Although the victim of the charged offense herein, A.S., was arguably in a familial relationship with appellant, the same cannot be said of the victims of the collateral offenses. The parties concede that the admissibility test in this case is measured by the stricter standard for non-familial settings where the collateral offense(s) must bear a higher degree of similarity to the charged offense. See Rawls, 649 So.2d at 1353; cf. Saffor v. State, 660 So.2d 668 (Fla.1995) (recognizing the relaxed standard of admissibility of the collateral sex crime evidence for familial sexual battery cases); Barton v. State, 704 So.2d 569 (Fla. 1st DCA 1997) (stating that in a familial setting, the familial relationship itself may be one of the points of similarity between the charged and collateral offenses.)
Id. at D1893-1894, 717 So.2d at 94-95.
In Rowland v. State, 680 So.2d 502, 504 (Fla. 1st DCA 1996), we recognized the difficulty facing the trial courts in trying to determine on a case-by-case basis whether "alleged sex acts performed by an adult upon one child are sufficiently similar to other sex acts allegedly performed upon another child to meet the standard of admissibility." A review of several recent cases, however, may be instructive. In Rowland, we determined that collateral crime evidence was properly admitted where the alleged acts occurred in the same location, all of the victims were of the same gender, all of the victims were approximately the same age at the time of the alleged incident, and the physical acts which occurred were quite similar. See Rowland, supra at 504. In Johnson v. State, 717 So.2d 1057, 23 Fla.L. Weekly D1894 (Fla. 1st DCA 1998), a case involving sexual batteries on adults, this court found that similarity in time of day, location, and detailed method of commission of the crime was sufficient to properly allow the collateral crime evidence. See id. at D1897, 717 So.2d at 1065. In Morrow, however, we found that dissimilarities in location, number of people present at the time of the incident, and method of gaining access to the victim required reversal based upon improper admission of collateral crimes. See Morrow, supra at D1894, 717 So.2d at 94.
In the instant case, the similar crime evidence admitted through the testimony of Deputy Braband has very little if any resemblance to the crime charged in this case. In fact, it is strikingly dissimilar to the crime charged. The collateral crime evidence offered involved two girls who were both sexually assaulted in different ways, neither of which involved the same type of assault that was alleged against the male victim in the instant case. The collateral crimes involved digital penetration, masturbation, and fondling; whereas, the crime charged in this case was "anal penetration." In addition, the eight-year-old girl was molested outdoors "down to the end of the garden," while in the instant case, the victim testified that while they were at home the appellant "pulled [R.F.] down on the mattress with him." There was also testimony that the appellant was babysitting with the victim in the instant case at the time of the alleged sexual battery, but there is no indication of any similar familial or custodial relationship with the two girls that were involved in the collateral crime incidents. The collateral crime evidence is not only very dissimilar, but it does not tend to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or any material fact in issue in the charged case. The improper admission requires reversal.

Hearsay Statements of Victim
The state proffered the testimony of R.F.'s counselor, Thomasine Yardley, following which the court limited her testimony to only what the alleged victim told her. She testified as to her qualifications and that she was a counselor specializing in sexual abuse who had seen R.F. at the request of state authorities. She testified that during her fourth session with R.F., he said that the appellant "stuck his privates into his butt." Section 90.803(23), Florida Statutes (1997), provides for a hearsay exception to allow *863 trustworthy and reliable statements from a child sexual abuse victim to be admitted in court. Section 90.803(23)(a) 1, Florida Statutes (1997), provides for such testimony to be admissible if
[t]he court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provides sufficient safeguards of reliability....
Section 90.803(23)(c), Florida Statutes (1997), requires as follows:
The court shall make specific findings of fact, on the record as to the basis for its ruling under this subsection.
At the time the state proffered the testimony of Ms. Yardley, defense counsel made no objection to her testimony as a hearsay exception; the only objection raised by the defense at that time was to Ms. Yardley's testimony as an expert on symptoms of child abuse victims.[2] The court's only finding in regard to Ms. Yardley's testimony following proffer was that she was qualified to testify as an expert:
Based on my hearing of her testimony, I'm gonna [sic] determine and I'll allow her to testify as an expert in the field of child sexual abuse cases. I will allow her, because of that and because of the testimony that she's given, to testify under 803.23 of any statement made by the child to her which would indicate evidence of acts of sexual abuse. I will not allow her to elaborate on the effect this has had on the child and the types of procedures she used to get there. I will allow and limit her testimony to the things that the child has told her about the act that is the subject of this case....
....
I will not allow her to testify to anything except what her interview with the child revealed, what the child said happened.
The court's singular finding, that Ms. Yardley qualified as an expert, does not satisfy the statutory requirement of sections 90.803(23)(a) and (c), Florida Statutes (1997), that the court make a determination of the reliability of the hearsay statement and make specific findings. See State v. Townsend, 635 So.2d 949, 957-958 (Fla.1994); Moore v. State, 658 So.2d 600, 601 (Fla. 1st DCA 1995) (holding that trial court erred by failing to make case specific findings to justify admission of hearsay statement under § 90.803(23)). Without more, the mere finding that the counselor was an expert does not assure reliability. Such a position would allow for hearsay evidence in almost every case of child sexual abuse. The expertise of the counselor must be tied to factors which lead to reliability (for example, the method of questioning the victim or the timing of the statement). Upon remand, if the state seeks to introduce this evidence, the court should make the required findings, in accordance with section 90.803(23), Florida Statutes (1997).
We reverse and remand.
JOANOS and LAWRENCE, JJ., concur.
NOTES
[1] In Williams v. State, 110 So.2d 654, 661 (Fla. 1959), the supreme court held that evidence is admissible "if found to be relevant for any purpose save that of showing bad character or propensity" of the accused, and evidence is relevant "if it bears a certain relation to the crime charged to the extent that it is relevant to a fact in issue...."
[2] We note that defense counsel's objection following proffer was inadequate; a similar objection made following Ms. Yardley's testimony before the jury, was both inadequate and untimely. Although not preserved for review, we write on this issue to apprise the trial court of the appropriate procedure if the state seeks to introduce this evidence on remand based upon our determination that the collateral crime evidence was improperly introduced.