990 So.2d 626 (2008)
Juan PANTOJA, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-2810.
District Court of Appeal of Florida, First District.
September 4, 2008.
*627 Nancy A. Daniels, Public Defender, and Kathleen Stover, Assistant Public Defender, Tallahassee, for Appellant.
*628 Bill McCollum, Attorney General, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
LEWIS, J.
Juan Pantoja, Appellant, challenges his conviction and sentence for sexual battery and lewd or lascivious molestation. He raises two issues on appeal, and we affirm as to both issues. Only one of the issues, whether the trial court erred in excluding evidence that the victim recanted a prior accusation of molestation against another person, merits discussion. We hold that the trial court properly excluded this evidence under the well-settled rule that a witness' credibility may not be attacked by proof that she committed specific acts of misconduct that did not end in a criminal conviction. We find the instant case factually indistinguishable from Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988), where the Second District reached a contrary holding. Accordingly, in affirming the trial court, we certify conflict with the Second District's opinion in Jaggers.
Before Appellant's trial, the State filed a motion in limine, requesting that the defense be prohibited from asking questions concerning an allegation that the victim's uncle, T.D.,[1] had inappropriately touched her. Appellant argued that he should be permitted to present evidence that the victim had accused T.D. of molesting her and later admitted the accusation was false. He proffered the testimony of the victim's grandmother and aunt, who were also T.D.'s mother and sister, respectively. Both of these witnesses stated that the victim told them she had lied about T.D. because she was mad at him, although they gave different reasons for the victim's alleged anger at T.D. Appellant's counsel also cross-examined the victim outside the presence of the jury. During that cross-examination, the victim testified that T.D. had sexually abused her. She denied having recanted her previous statements about the incident. Appellant's counsel then attempted to impeach the victim with the following statement from her deposition: "I told my aunt [C.M.D.] once about Juan touching me, but I guess she might have gotten mad at my uncle and said that he did it to Nanna because my nanna will believe anything."[2] Finally, Appellant proffered the testimony of Mary Van Tassel, a Headstart counselor who had worked closely with the victim's family. In proffer, Van Tassel testified that, after observing a change in the victim's behavior, she asked the victim if Appellant and T.D. had touched her inappropriately. Van Tassel then testified that the victim "said very quietly with her head down ... and looking away, `No,' ... And she had tears in her eyes and ... she stopped talking." Van Tassel further testified the victim denied that T.D. touched her in a sexual way. The trial court ruled that the defense could not cross-examine the victim about her allegations against T.D. or solicit extrinsic evidence on the subject.
Although Appellant was not permitted to impeach the victim with her allegedly false prior report of molestation, he did present to the jury several other grounds *629 for discrediting her testimony. In cross-examination, Appellant's attorney questioned the victim regarding perceived inconsistencies between her out-of-court statements and her trial testimony, as well as between her direct testimony and her testimony on cross. Additionally, Appellant's attorney asked the victim if she had told Mary Van Tassel that Appellant had not molested her. The victim denied having made such a statement to Van Tassel. Appellant later called Van Tassel as a witness, and she testified that when she asked the victim if Appellant had touched her, the victim "said no ma'am, and she dropped her head and looked away."
An examination of the applicable sections of the Florida Evidence Code and provisions of the state and federal constitutions reveals that the trial court properly excluded all references to the victim's allegedly false prior accusation against her uncle, who was not the defendant in this case. We begin our discussion by explaining the proper methods of impeaching a witness, as codified in the Evidence Code and further explicated by the Florida Supreme Court. In doing so, we adhere to the position we stated in Roebuck v. State, 953 So.2d 40 (Fla. 1st DCA 2007), which is that this Court is not empowered to create exceptions to the statutory sections governing impeachment of witnesses. Next, we will address Appellant's argument that failure to recognize an exception in the instant case is a violation of his right to confront witnesses, as set forth in article I, section 16, subsection (a) of the state constitution and the Sixth Amendment of the federal constitution. Because we conclude that Appellant has not stated a basis for admission of the proffered evidence in either statutory or constitutional law, we conclude that his judgment and sentence must be affirmed.
In Florida, a witness may not be impeached by any means not recognized in the Evidence Code. See Rose v. State, 472 So.2d 1155, 1157-58 (Fla.1985) (holding that a trial court properly refused to allow impeachment by a means not listed in section 90.608, Florida Statutes (1983)). Section 90.608 provides a complete list of the proper ways to attack a witness' credibility:
(1) Introducing statements of the witness which are inconsistent with the witness's present testimony.
(2) Showing that the witness is biased.
(3) Attacking the character of the witness in accordance with the provisions of s. 90.609 or s. 90.610.
(4) Showing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which the witness testified.
(5) Proof by other witnesses that material facts are not as testified to by the witness being impeached.
Section 90.609(1) permits credibility attacks in the form of evidence that the witness has a poor reputation for truthfulness, but it does not authorize proof of the witness' character for truthfulness or untruthfulness by evidence of specific acts. But cf. Charles W. Ehrhardt, Florida Evidence § 609.1 at 574 (noting that a witness who has testified regarding a person's good reputation for truthfulness may be cross-examined regarding that person's specific acts of misconduct). Section 90.610 provides for impeachment based on a witness' conviction for a crime punishable by more than one year in prison or a crime that involves dishonesty or a false statement. Other than this limited exception, the Evidence Code does not provide for impeachment of a witness by evidence of prior acts of misconduct. Roebuck, 953 So.2d at 41. Therefore, trial courts should *630 not allow impeachment by such means. Id.
Calling this evidentiary rule a "broad general principle of law," the Second District Court of Appeal has developed "an exception applicable to particular circumstances." Jaggers v. State, 536 So.2d at 327. Although the Jaggers court did not precisely define the parameters of its exception, it specifically held that evidence that a witness has falsely accused a person of sexual abuse must be admitted when the defendant is being tried for a crime of sexual abuse and "there is no independent evidence of the abuse and the defendant's sole defense is either fabrication or mistake on the part of the alleged victims." Id. The Second District reached this holding after concluding that such evidence is "relevant to the possible bias, prejudice, motive, intent or corruptness" of the witness. Id. Evidence that is relevant to a witness' bias is admissible under section 90.608(2). Prejudice, motive to testify, and intent in testifying are all ways of showing the witness' bias, and, thus, are also proper grounds for impeachment under section 90.608(2). However, there is no provision in the Evidence Code allowing general evidence of "corruptness" as a means of impeaching a witness. The only such admissible evidence is evidence of a prior conviction under section 90.610 or evidence that the witness has a poor reputation for truthfulness under section 90.609. Accordingly, we cannot agree with the Second District that a witness' prior false accusation of sexual abuse against a person other than the defendant always constitutes grounds for impeachment.
Appellant urges us to adopt the reasoning of Jaggers, despite the fact that we rejected the Jaggers court's position in Roebuck v. State, 953 So.2d 40 (Fla. 1st DCA 2007). In Roebuck, 953 So.2d at 41, we certified conflict with Jaggers, as well as Cliburn v. State, 710 So.2d 669 (Fla. 2d DCA 1998), "to the extent they create a false reporting exception to section 90.610, Florida Statutes." The supreme court initially accepted jurisdiction and, after a determination that there was no express conflict, dismissed the review proceedings. Roebuck v. State, 982 So.2d 683, 683 (Fla. 2008). While the supreme court did not explain its determination of no conflict, we recognize several potential reasons for the determination: (1) that the Roebuck Court expressly distinguished Jaggers and Cliburn, (2) that the Roebuck Court acknowledged that, "based on the facts of a particular case, due process may require germane cross-examination of a witness regarding a prior incident of false reporting," see Roebuck, 953 So.2d at 43-44, or (3) that the supreme court did not interpret these cases as creating a general exception to the Evidence Code. We are now presented with facts more closely aligned with the facts of Jaggers. After reviewing the facts and law applicable to both cases, we have determined that our position in this case is irreconcilable with the position taken by the Second District in Jaggers. We further conclude that neither the instant case, nor Jaggers, constitutes the rare case where due process requires cross-examination of a witness regarding a prior incident of false reporting notwithstanding the Legislature's intentional omission of a provision allowing credibility challenges based on specific acts of misconduct that did not result in a criminal conviction.
Appellant contends that the evidence of the victim's prior accusations could have been admitted under 90.405(2), Florida Statutes (2006), which provides, "When character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may be made of specific instances of that person's conduct." There is some support for this *631 argument in Jaggers. See 536 So.2d at 327. However, we disagree with the Second District's application of this section, as we explained in Roebuck, 953 So.2d at 43-44. The victim's character was not an essential element of a charge, claim, or defense in the instant case. Appellant argues that the victim's character was critical to the defense because its position was that she was lying. If Appellant's argument were accurate, then the victim's character would be an essential element of the defense in almost every case. In fact, we rejected a similar argument in Roebuck, explaining, "Cases in which character is actually at issue are `relatively rare' and do not impede on the traditional rule that specific incidents of misconduct are generally not admissible to prove character." 953 So.2d at 43-44 (citation omitted).
In applying Roebuck to the instant case, we have considered whether Appellant's rights to due process and confrontation of witnesses require a different result. Our decision is governed by the United States Supreme Court's decision in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and its progeny. The Davis Court held that the denial of the right to effective cross-examination is a violation of the Confrontation Clause and that when a state law would deny a defendant that right, the state law must yield. 415 U.S. at 318-19, 94 S.Ct. 1105. In reaching this holding, the Davis Court distinguished between general attacks on credibility and more particular attacks. Id. at 316-17, 94 S.Ct. 1105. The Davis Court explained that when "the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in this testimony," general credibility is at issue. Id. at 316, 94 S.Ct. 1105. An example of this type of credibility attack is the introduction of evidence of a prior crime. Id. In contrast, a particular credibility attack "is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Id. State laws that limit a defendant's right to launch a general credibility attack against a witness do not violate the Confrontation Clause, while state laws that limit a defendant's right to launch a particular credibility attack are constitutionally infirm. See id.
Several federal courts of appeals have concluded that there is no constitutional error in prohibiting cross-examination of a witness regarding an alleged false accusation against someone other than the defendant. See, e.g., Boggs v. Collins, 226 F.3d 728, 739 (6th Cir.2000) (concluding that a defendant who was convicted of rape was not constitutionally entitled to cross-examine the victim regarding an alleged prior false accusation of rape against another person, as his sole basis for such cross-examination was to show that if she lied once, she would do it again); Hogan v. Hanks, 97 F.3d 189, 192 (7th Cir.1996) (upholding a state court's decision to disallow questioning of a rape victim regarding two alleged prior false accusations where state law required evidence that the prior reports were "demonstrably false" before permitting such questioning); see also State v. Raines, 118 S.W.3d 205, 213 (Mo. Ct.App.2003) (noting that the majority of the federal appellate courts that have addressed the issue have found no violation of the Confrontation Clause where a trial court has prevented cross-examination for the sole purpose of showing that a witness has a "tendency to lie, based on a pattern of past lies"). Applying Davis, the Seventh Circuit held that impeachment with evidence of a prior false report constitutes a general credibility attack for which there *632 is no constitutional entitlement. Boggs, 226 F.3d at 739. The following language from Boggs is instructive:
No matter how central an accuser's credibility is to a caseindeed, her credibility will almost always be the cornerstone of a rape or sexual assault case... the Constitution does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct.... Under Davis and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/accuser.
Id. at 740. The Sixth Circuit, in Hogan, noted that the Supreme Court had never held "or even suggested" that a prohibition against using specific acts of misconduct to impeach a witness posed constitutional problems. 97 F.3d at 191.
We agree with the courts that hold that states have no federal constitutional duty to allow evidence that a witness has falsely accused another person of criminal conduct, as this type of credibility attack is typically relevant only to the witness' general character, and not his or her particular bias against the defendant on trial. Likewise, we have found nothing in our state constitution that would require such evidence to be admitted in every case. While many state courts have decided to allow such evidence on state law grounds, this Court does not have the authority to create exceptions to the Evidence Code. Roebuck, 953 So.2d at 43.
In the instant case, Appellant argues that the evidence showed the victim's bias against him and her motive to lie. The record does not support such a claim. Even assuming Appellant could show that the victim's prior allegation against her uncle was false, this showing would not tend to prove that she had a motive to make an accusation against Appellant. Even though the evidence would relate to the victim's propensity to lie about sexual molestation specifically, it is still general propensity evidence under Davis, as it does not relate to this defendant in particular or the facts of this case in particular.
We agree that the evidence may be highly probative of the victim's general credibility. At the same time, we recognize that the type of evidence Appellant sought to introduce is prohibited under current state law, and we are bound to apply that law, absent a constitutional infirmity. We adhere to our previously stated position that under the facts of another case, the circumstances surrounding the prior false accusation may be so similar to the circumstances surrounding the accusation in the defendant's case that due process would require cross-examination regarding the prior incident. We are not presented with such a case today. Appellant's proffered evidence, taken in the light most favorable to him, showed only that the victim previously falsely accused someone of sexual molestation when she was angry. The evidence Appellant adduced in the proffer and at trial did not reveal that the victim's accusation against Appellant was made under substantially the same circumstances as her prior accusation. Accordingly, we hold that the trial court properly excluded all references to the prior accusation. Thus, we affirm Appellant's judgment and sentence and certify conflict with Jaggers.
AFFIRMED; CONFLICT CERTIFIED.
BARFIELD and WEBSTER, JJ., concur.
NOTES
[1] The victim's uncle is not a child. However, we have used initials for his name, as well as the names of other members of the victim's family, to protect the victim's identity.
[2] The trial court found that this statement, when read in context, was not a retraction of the victim's prior statements that T.D. had molested her. We cannot evaluate the statement in context because the deposition is not included in the record. The proper interpretation of this statement is not necessary to a proper disposition of this case because we conclude that any evidence of the victim's recantation of the allegations against T.D. was inadmissible.