PER CURIAM.
This case is before the Court for review of the decision of the First District Court of Appeal in Pantoja v. State, 990 So.2d 626 (Fla. 1st DCA 2008). The district court certified that its decision is in direct conflict with the decision of the Second District Court of Appeal in Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
FACTS
On April 20, 2006, Juan Pantoja was sentenced to life imprisonment after a jury convicted him of sexual battery on a child under twelve years of age by a defendant less than eighteen years of age and lewd or-lascivious molestation by a defendant eighteen years of age or older.[1] This case involves the following facts:
Juan Pantoja, Appellant, challenges his conviction and sentence for sexual battery and lewd or lascivious molestation. He raises two issues on appeal, and we affirm as to both issues.. Only one of the issues, whether the trial court erred in excluding evidence that the victim recanted a prior accusation of molestation against another person, merits discussion. We hold that the trial court properly excluded this evidence under the well-settled rule that a witness’ credibility may not be attacked by proof that she committed specific acts of misconduct that did not end in a criminal conviction. We find the instant case factually indistinguishable from Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988), where the Second District reached a *1095 contrary holding. Accordingly, in affirming the trial court, we certify conflict with the Second District’s opinion in Jaggers.
Before Appellant’s trial, the State filed a motion in limine, requesting that the defense be prohibited from asking questions concerning an allegation that the victim’s uncle, T.D., had inappropriately touched her. Appellant argued that he should be permitted .to present evidence that the victim had accused T.D. of molesting her and later admitted the accusation was false. He proffered the testimony of the victim’s grandmother and aunt, who were also T.D.’s mother and sister, respectively. Both of these witnesses stated that the victim told them she had lied about T.D. because she was mád at him, although they gave different reasons for the victim’s alleged anger at T.D. Appellant’s counsel also cross-examined the victim outside the presence of the jury; During that cross-examination, the victim testified that T.D. had sexually abused her. She denied having recanted her previous statements about the incident. Appellant’s counsel then attempted to impeach the victim with the following statement from her deposition: “I told my aunt [C.M.D.] once about Juan touching me, but I guess she might have gotten mad at my uncle and said that he did it to Nanna because my nanna will believe anything.” Finally, Appellant proffered the testimony of Mary Van Tassel, a Headstart counselor who had worked closely with the victim’s family. In proffer, Van Tassel testified that, after observing a change in the victim’s behavior, she asked the victim if Appellant and T.D. had touched her inappropriately. Van Tassel then testified that the victim “said very quietly with her head down ... and looking away, ‘No,’ ... And she had tears in her eyes and ... she stopped talking.” Van Tassel further testified the victim denied that T.D. touched her in a sexual way. The trial court ruled that the defense could not cross-examine the victim about her allegations against T.D. or solicit extrinsic evidence on the subject.
Although Appellant was not permitted to impeach the victim with her allegedly false prior report of molestation, he did present to the jury several other grounds for discrediting her testimony. In cross-examination, Appellant’s attorney questioned the victim regarding perceived inconsistencies between her out-of-court statements and her trial testimony, as well as between her direct testimony and her testimony on cross. Additionally, Appellant’s attorney asked the victim if she had told Mary Van Tassel that Appellant had not molested her. The victim denied having made such a statement to Van Tassel. Appellant later called Van Tassel as a witness, and she testified that when she asked the victim if Appellant had touched her, the victim “said no ma’am, and she dropped her head and looked away.”
Pantoja v. State, 990 So.2d 626, 628-29 (Fla. 1st DCA 2008) (footnotes omitted).
STANDARD OF REVIEW
As a, general rule, “[a] trial judge’s ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion.” Blanco v. State, 452 So.2d 520, 523 (Fla.1984). “However, a court’s discretion is limited by the evidence code and applicable case law. A court’s erroneous interpretation of these authorities is subject to de. novo review.” McCray v. State, 919 So.2d 647, 649 (Fla. 1st DCA 2006). “The standard of review applicable to a trial court decision based on a finding of fact is whether the decision is supported by competent substantial evi *1096 dence.” Teffeteller v. Dugger, 734 So.2d 1009, 1017 (Fla.1999) (quoting Phillip J. Padovano, Florida Appellate Practice § 9.6, at 155 (2d ed.1997)).
ANALYSIS
To begin, Pantoja argues that the victim’s prior accusation against her uncle should have been admitted under section 90.610, Florida Statutes (2002), because there is a false reporting exception to section 90.610’s criminal conviction requirement. We disagree. Section 90.610 provides:
(1) A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment, with the following exceptions:
(a) Evidence of any such conviction is inadmissible in a civil trial if it is so remote in time as to have no bearing on the present character of the witness.
(b) Evidence of juvenile adjudications are inadmissible under this subsection.
(2) The pendency of an appeal or the granting of a pardon relating to such crime does not render evidence of the conviction from which the appeal was taken or for which the pardon was granted inadmissible. Evidence of the pendency of the appeal is admissible.
(3) Nothing in this section affects the admissibility of evidence under s. 90.404 or s. 90.608.
§ 90.610, Fla. Stat. (2002). “[T]he Legislature adopted the express wording of section 90.610, Florida Statutes, in an effort to bar all character impeachment based on prior misconduct that did not involve a criminal conviction. The plain language of section 90.610, Florida Statutes, authorizes impeachment with only prior convictions .... ” Roebuck v. State, 953 So.2d 40, 43 (Fla. 1st DCA 2007). “[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
The Florida Legislature’s intent regarding section 90.610 is clear. While Federal Rule of Evidence 608(b) permits character impeachment through prior misconduct without a criminal conviction requirement, Florida’s Legislature adopted our evidence code without this language. See Roebuck, 953 So.2d at 43. Professor Charles Eh-rhardt distinguished section 90.610 from Federal Rule of Evidence 608(b):
Occasionally decisions ignore the limitation and permit impeachment with prior acts of misconduct of a witness when they involve prior false accusations of a crime by the witness.
[[Image here]]
The drafters of the Code specifically intended not to adopt provision similar to Federal Rule 608(b) because it did not reflect the existing Florida law and because they felt the possibility for abuse of this type of evidence was great.
Charles W. Ehrhardt, Florida Evidence § 610.8 (2010 ed.).
We agree with the First District’s determination that section 90.610 does not permit an exception to the conviction requirement for prior false accusations. We have held that “evidence of particular acts of ethical misconduct cannot be introduced to impeach the credibility of a witness. The only proper inquiry into a witness’s *1097 character for impeachment purposes goes to the witness’s reputation for truth and veracity.” Fernandez v. State, 730 So.2d 277, 282 (Fla.1999). In so holding, we have explained, “Allowing this testimony would violate sections 90.608, 90.609, and 90.610, Florida Statutes (1998), which prohibit impeachment by reference to specific bad acts other than convictions for felonies or misdemeanors involving dishonesty.” Fernandez, 730 So.2d at 282-83. In accordance with this, we have repeatedly interpreted section 90.610 to permit impeachment of a witness’s credibility only by felony conviction or by a conviction involving a crime of dishonesty or false statement. See id.; Farinas v. State, 569 So.2d 425, 429 (Fla.1990); Jackson v. State, 545 So.2d 260, 264 (Fla.1989); Hitchcock v. State, 413 So.2d 741, 744 (Fla.1982); Fulton v. State, 335 So.2d 280, 284 (Fla.1976). Accordingly, we approve the First District’s decision in Pantoja, holding that section 90.610 does not permit impeachment of a witness with evidence of a prior accusation that did not result in a criminal conviction.
Pantoja further argues that the victim’s prior false accusation is admissible under section 90.608(2), Florida Statutes (2002), to prove bias or motive to lie. We disagree. Section 90.608(2) provides, “Any party, including the party calling the witness, may attack the credibility of a witness by: ... (2) Showing that the witness is biased.” Although the facts of Jaggers did support the use of false reporting evidence to establish bias or motive pursuant to section 90.608(2), that provision is not applicable in the instant case. Unlike Jaggers, the prior accusation in Pantoja involved the victim’s uncle, not Pantoja. Although both of the victim’s prior accusations were sexual in nature, the degree of the alleged abuse varied greatly. The victim had previously accused her uncle of inappropriately touching her over her clothing, whereas the victim’s accusation against Pantoja involved physical and oral sexual acts that were performed under the clothes or without clothing. Pantoja claims the evidence of the victim’s prior accusation should have been admitted to show that she fabricated the charges against Pantoja because her family was upset that Pantoja had recently been bailed out of jail on an unrelated charge. However, the proffered evidence did not establish a motive for the victim to lie about the abuse. The proffered evidence merely showed that the victim previously accused her uncle of inappropriately touching her at one time and that no one believed her or acted on her allegation. An investigation into the allegation against her uncle was never conducted and her uncle was never punished for the alleged conduct. It does not logically follow that the victim would have motive to lie about sexual abuse because her prior allegation went unacknowledged.
Next, Pantoja argues that the victim’s prior accusation should have been admitted under section 90.405(2), Florida Statutes (2002). We disagree. Section 90.405(2) provides, ‘When character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may be made of specific instances of that person’s conduct.” Here, the victim’s character was not an essential element of the defense or charge. It is a rare occurrence that character is an essential element of a claim! or defense. “Were this court to expand the narrow application of section 90.405(2)’s character at issue provision to all cases in which the veracity of a witness is pertinent to the proceedings, section 90.610’s confinement of impeachment evidence to only prior convictions would be rendered ‘meaningless.” Roebuck, 953 So.2d at 44.
*1098 Likewise, Pantoja contends that evidence of a prior accusation is admissible under section 90.405(2) as a specific instance of conduct to show that the victim was inclined to lie about sexual abuse. We disagree. The First District rejected this argument and explained:
There is some support for this argument [that a prior false accusation is admissible under section 90.405(2) to show the victim was inclined to lie about sexual abuse] in Jaggers. See 536 So.2d at 327. However, we disagree with the Second District’s application of this section, as we explained in Roebuck, 953 So.2d at 43-44. The victim’s character was not an essential element of a charge, claim, or defense in the instant case. Appellant argues that the victim’s character was critical to the defense because its position was that she was lying. If Appellant’s argument were accurate, then the victim’s character would be an essential element of the defense in almost every case. In fact, we rejected a similar argument in Roebuck, explaining, “Cases in which character is actually at issue are ‘relatively rare’ and do not impede on the traditional rule that specific incidents of misconduct are generally not admissible to prove character.” 953 So.2d at 43-44 (citation omitted).
Pantoja, 990 So.2d at 630-31. Moreover, the First District declined to adopt the Second District’s holding in Jaggers “that evidence that a witness has falsely accused a person of sexual abuse must be admitted when the defendant is being tried for a crime of sexual abuse and ‘there is no independent evidence of the abuse and the defendant’s sole defense is either fabrication or mistake on the part of the alleged victims.’” Pantoja, 990 So.2d at 630 (quoting Jaggers, 536 So.2d at 327). In Pantoja, the First District reasoned:
The Second District reached this holding after concluding that such evidence is “relevant to the possible bias, prejudice, motive, intent or corruptness” of the witness. Id. Evidence that is relevant to a witness’ bias is admissible under section 90.608(2). Prejudice, motive to testify, and intent in testifying are all ways of showing the witness’ bias, and, thus, are also proper grounds for impeachment under section 90.608(2). However, there is no provision in the Evidence Code allowing general evidence of “corruptness” as a means of impeaching a witness. The only such admissible evidence is evidence of a prior conviction under section 90.610 or evidence that the witness has a poor reputation for truthfulness under section 90.609. Accordingly, we cannot agree with the Second District that a witness’ prior false accusation of sexual abuse against a person other than the defendant always constitutes grounds for impeachment.
Pantoja, 990 So.2d at 630.
Finally, Pantoja contends that his right to confront the -witness, as set forth in article I, section 16(a) of the Florida Constitution and the Sixth Amendment of the United States Constitution, was violated. We disagree. The First District correctly determined that Pantoja’s right to confront the witness had not been violated and explained:
In applying Roebuck to the instant case, we have considered whether Appellant’s rights to due process and confrontation of witnesses require a different result. Our decision is governed by the United States Supreme Court’s decision in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and its progeny. The Davis Court held that the denial of the right to effective cross-examination is a violation of the Con *1099 frontation Clause and that when a state law would deny a defendant that right, the state law must yield. 415 U.S. at 318-19, 94 S.Ct. 1105. In reaching this holding, the Davis Court distinguished between general attacks on credibility and more particular attacks. Id. at 316-17, 94 S.Ct. 1105. The Davis Court explained that when “the cross-examiner intends to afford the jury a basis to infer that the witness’ character is such that he would be less likely than the average trustworthy citizen to be truthful in this testimony,” general credibility is at issue. Id. at 316, 94 S.Ct. 1105. An example of this type of credibility attack is the introduction of evidence of a prior crime. Id. In contrast, a particular credibility attack “is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.” Id. State laws that limit a defendant’s right to launch a general credibility attack against a witness do not violate the Confrontation Clause, while state laws that limit a defendant’s right to launch a particular credibility attack are constitutionally infirm. See id.
Several federal courts of appeals have concluded that there is no constitutional error in prohibiting cross-examination of a witness regarding an alleged false, accusation against someone other than the defendant. See, e.g., Boggs v. Collins, 226 F.3d 728, 739 (6th Cir.2000) (concluding that a defendant who was convicted of rape was not constitutionally entitled to cross-examine the victim regarding an alleged prior false accusation of rape against another person, as his sole basis for such cross-examination was to show that if she lied once, she would do it again); Hogan v. Hanks, 97 F.3d 189, 192 (7th Cir.1996) (upholding a state court’s decision, to disallow questioning of a rape victim regarding two alleged prior false accusations where state law required evidence that the pri- or reports were “demonstrably false” before permitting such questioning); see also State v. Raines, 118 S.W.3d 205, 213 (Mo.Ct.App.2003) (noting that the majority of the federal appellate courts that have addressed the issue have found no violation of the Confrontation Clause where a-trial court has prevented cross-examination for the sole purpose of showing that a witness has a “tendency to lie, based on a pattern of past lies”). Applying Davis, the Seventh Circuit held that impeachment with evidence of a prior false report constitutes a general credibility attack for which there is no constitutional entitlement.
Boggs, 226 F.3d at 739. The following language from Boggs is instructive:
No matter how central an accuser’s credibility is to a case — indeed, her credibility will almost always be the cornerstone of a rape or sexual assault case ... — the Constitution does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct.... Under Davis and its progeny, the Sixth Amendment only compels cross-examination if that examination aims to reveal the motive, bias or prejudice of a witness/aceuser.
Id. at 740. The Sixth Circuit, in Hogan, noted that the Supreme Court had never held “or even suggested” that a prohibition against using specific acts of misconduct to impeach a witness posed constitutional problems. 97 F.3d at 191.
Pantoja, 990 So.2d at 631-32. Accordingly, it is clear that Pantoja’s confrontation claim lacks merit. Federal courts have upheld exclusion of prior false accusation *1100 evidence against Sixth Amendment challenges because the evidence was properly excluded under Federal Rule of Evidence 403. See United States v. Kenyon, 481 F.3d 1054, 1064 (8th Cir.2007); United States v. Tail, 459 F.3d 854, 860 (8th Cir.2006); Hughes v. Raines, 641 F.2d 790, 793 (9th Cir.1981). But see Redmond v. Kingston, 240 F.3d 590, 591-92 (7th Cir.2001); United States v. Stamper, 766 F.Supp. 1396, 1398 (W.D.N.C.1991). “Evidence alleging that the accuser made false prior accusations may be excluded if the evidence has minimal probative value.” Tail, 459 F.3d at 860. According to section 90.403, Florida Statutes (2002), “[relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence.” The trial court’s exclusion of the victim’s prior accusation does not result in a confrontation violation for several reasons. First, the victim’s prior accusation was against her uncle, not Pantoja. Second, the victim’s accusation against her uncle involved a one-time incident involving “over-the-clothes” groping, whereas her accusation in the instant case involves “under-the-clothes” sexual acts that occurred on multiple occasions. Third, the victim testified that she did not recant her prior accusation against her uncle. Finally, cross-examination regarding the victim’s prior accusation would not have explained her knowledge of sex to the jury and might have caused the jury to infer that she had a propensity to lie about sexual abuse. Section 90.404(2)(a), Florida Statutes (2002), expressly prohibits the use of “[sjimilar fact evidence of other crimes, wrongs, or acts ... when the evidence is relevant solely to prove bad character or propensity.”
Accordingly, we approve the First District’s decision in Pantoja and disapprove the Second District’s decision in Jaggers to the extent that it is inconsistent with this opinion.
It is so ordered.
POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in result with an opinion.
LEWIS, J., concurs in result.
CANADY, C.J., dissents with an opinion, in which QUINCE, J., concurs.

. Pantoja was thirty-six years old when he committed the offense. . In the information, Pantoja was charged in Count I for sexual battery on a child under twelve years of age by a defendant eighteen years of age or older, and in Count II for lewd or lascivious molestation. However, on March 29, 2006, the jury found Pantoja guilty of the lesser included offense of sexual battery on a child under twelve years of age by a defendant less than eighteen years of age.