# Third District Court of Appeal

## State of Florida

Opinion filed May 5, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-0477
Lower Tribunal No. F17-11054
_____

**Marlon Terrance Murphy,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Andrea R. Wolfson, Judge.

Rier Jordan, P.A., and Jonathan E. Jordan, for appellant.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for appellee.

Before EMAS, C.J., and FERNANDEZ, and MILLER, JJ.

MILLER, J.

In all criminal prosecutions, the accused enjoys the Sixth Amendment right "to be confronted with the witnesses against him" or her. Maryland v. Craig, 497 U.S. 836, 844, 110 S. Ct. 3157, 3162, 111 L. Ed. 2d 666 (1990). However, in sexual crimes cases, this right must be balanced against the interest of the State in protecting the privacy of the complaining witness. Here, appellant, Marlon Terrance Murphy, contends the trial court unconstitutionally infringed upon his right of confrontation by prohibiting him from introducing evidence of prior sexual assault allegations by the complainant.[1] Discerning no error, we affirm.

**BACKGROUND**

Murphy was accused of forcibly penetrating an acquaintance while the two were viewing a movie in a bedroom of his home. The State charged him with a single count of sexual battery, in violation of section 794.011(5), Florida Statutes. Prior to trial, the State and defense filed dueling motions in limine directed at the admissibility of a prior report of sexual assault by the

---

[1] We summarily reject the claim of error arising out of the prosecutor's closing argument. See Davis v. State, 136 So. 3d 1169, 1205 (Fla. 2014) ("Closing argument is an opportunity . . . to 'explicate those inferences which may reasonably be drawn from the evidence.'") (citation omitted); Austin v. State, 700 So. 2d 1233, 1235 (Fla. 4th DCA 1997) ("The prosecution could lawfully respond that the defense argument is not what the evidence shows, by reminding the jury that all of the testimony was to the contrary.").

alleged victim. Both parties relied upon the deposition testimony of the victim in support of their respective positions.

In her deposition, the victim recounted that, when she was thirteen years old, she became involved in a sexual relationship with a cafeteria worker at her middle school. One evening, a law enforcement officer discovered the pair together in a park and escorted them to the victim's home. Upon arrival, the officer informed her father of the circumstances. After the officer left, the father became enraged and beat the victim.

Seeking refuge, the victim ran to a nearby laundromat, where she was purportedly approached by an unknown man. After she explained her predicament, he offered to conceal her from her father. Instead, he brought her to a nearby gas station bathroom and forced her to sit on his lap while he fondled her. The victim extricated herself and eventually returned home.

The following day, the victim's father informed school administrators of her relationship with the cafeteria worker. Law enforcement officers responded to the school to investigate. The victim was interrogated and sought to deflect the focus of the inquiry by disclosing the gas station assault. As a result, a police report was generated and physical evidence was collected, but the assailant was never identified.

Murphy proffered to the trial court he intended to establish the victim fabricated the gas station incident in order to evade discipline at the hands of her father. In support of his position, he suggested that the victim initially reported she had been penetrated in the gas station restroom, but later claimed she had only been inappropriately touched. He contended the purported fabrication was relevant to his theory of defense, which was that the victim had consensual sex with him and then manufactured rape charges to avoid possible repercussions from her boyfriend.

The State argued the prior incident was barred from admission by Florida's rape shield statute, and, alternatively, because the victim had not been convicted of filing a false police report and the previous event was both remote in time and factually dissimilar, it constituted prohibited, unduly prejudicial character evidence. See § 794.022(2), Fla. Stat.; § 90.404, Fla. Stat.; § 90.402, Fla. Stat.; § 90.610, Fla. Stat.

The lower tribunal excluded the evidence and the case proceeded to trial. After the jury found Murphy guilty as charged, the court adjudicated him and sentenced him to fifteen years in prison. The instant appeal ensued.

## STANDARD OF REVIEW

Although a trial court is afforded wide latitude when ruling upon the admissibility of evidence, this discretion "is constrained by the rules of

4

evidence . . . and by recognition of a criminal defendant's Sixth Amendment rights." McDuffie v. State, 970 So. 2d 312, 324 (Fla. 2007) (citation omitted). Accordingly, when reviewing "a trial court's ruling on admissibility of evidence over an objection based on the Confrontation Clause, [the] standard of review is de novo." Milton v. State, 993 So. 2d 1047, 1048 (Fla. 1st DCA 2008) (citation omitted).

## LEGAL ANALYSIS

Prior to the advent of rape shield laws, evidence of the past sexual conduct and promiscuity of a complainant was admissible in criminal proceedings on various theories of relevance. See Clifford S. Fishman, Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior, 44 Cath. U. L. Rev. 709, 714-15 (1995). In cases where consent was at issue, the admission of such evidence allowed the factfinder to draw the conclusion that "it [was] more probable that an unchaste woman would assent . . . than a virtuous woman." Vivian Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum. L. Rev. 1, 15 (1977) (second alteration in original) (quoting People v. Collins, 186 N.E.2d 30, 33 (Ill. 1962)). This resulted in jury verdicts premised wholly on "inferences that ha[d] no direct correlation

to either the alleged sexual assault in question or a material issue in the case." People ex rel. K.N., 977 P.2d 868, 874 (Colo. 1999).

Understandably, these evidentiary norms served as deterrents to the reporting and prosecution of sexual crimes. Harriett R. Galvin, Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade, 70 Minn. L. Rev. 763, 795 (1986). Thus, by the early 1970s, in an effort to abate the ordeal of complainants, curtail the undue influence of inflammatory evidence, and increase the reporting of rape, state legislatures began enacting rape shield laws designed to protect the privacy of sexual crime victims. See Elizabeth J. Kramer, When Men are Victims: Applying Rape Shield Laws to Male Same-Sex Rape, 73 N.Y.U. L. Rev. 293, 303 (1998).

First enacted in 1974, Florida's rape shield statute provides, in relevant part: "[s]pecific instances of prior consensual sexual activity between the victim and any person other than the offender may not be admitted into evidence in a [sexual crimes] prosecution." § 794.022(2), Fla. Stat. To account for relevancy concerns, the statute sets forth an exception in those instances where such evidence is relevant to proving "the defendant was not the source of the semen, pregnancy, injury, or disease; or, when consent by the victim is at issue." Id. However, the exception only applies where a

6

"pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent" is established.  Id.

By its plain language, the law narrowly applies to the admission of "consensual sexual activity with a person other than the accused."  Thorne v. State, 271 So. 3d 177, 184 (Fla. 1st DCA 2019) (quoting Gomez v. State, 245 So. 3d 950, 953 (Fla. 4th DCA 2018)); see McLean v. State, 754 So. 2d 176, 182 (Fla. 2d DCA 2000) ("The Rape Shield Statute, section 794.022, Florida Statues, . . . prohibits evidence of specific instances of prior *consensual* activity between the victim and any person other than the offender in sexual battery cases.") (emphasis added).  However, relying upon general evidentiary principles, our courts have embraced the broader proposition that evidence of any sexual activity, consensual or not, by the complainant with "one other than the accused is generally irrelevant for determining the guilt of the accused."  Lewis v. State, 591 So. 2d 922, 924 (Fla. 1991) (citing Marr v. State, 494 So. 2d 1139, 1142 (Fla. 1986)).

Here, Murphy sought permission to argue the victim fabricated a false report of sexual assault to protect herself from further abuse by her father. This theory was impossible to present to the jury without reference to the fact that the victim engaged in a sexual relationship with an adult school

7

employee. Such evidence was barred from admission, as it constituted a specific instance of prior sexual activity between the victim and another and failed to qualify for any statutory exception. See § 794.022(2), Fla. Stat.

This does not, however, end our analysis, as Murphy contends the rote application of the statutory prohibition violated his confrontation rights. The battle waged between the Sixth Amendment right to confront witnesses and rape shield laws is by now a familiar one, but not always easy to resolve. Although the right to cross-examine is not limitless, "[t]o the extent that a defendant in a rape case is categorically prevented from offering types of evidence that other criminal defendants may offer, his [or her] sixth amendment rights are violated." J. Alexander Tanford & Anthony J. Bocchino, Rape Victim Shield Laws and the Sixth Amendment, 128 U. Pa. L. Rev. 544, 545 (1980). In such circumstances, the law, as with any statutory enactment, must yield to the constitutional right. See Roberts v. State, 510 So. 2d 885, 892 (Fla. 1987) ("[I]f application of Florida's Rape Shield Law interfered with [the defendant's] confrontation rights or otherwise operated to preclude [the defendant] from presenting a full and fair defense, the statute would have to give way to these constitutional rights.") (citation omitted).

Thus, notwithstanding the implication of rape shield laws, where a defendant raises a confrontation challenge, the court must independently determine whether evidence of past sexual activity is relevant, and, if so, weigh "the probative value of the evidence against the unfair prejudice to the victim and the [S]tate's case to determine if it should be admitted." Robinson v. State, 575 So. 2d 699, 703 (Fla. 1st DCA 1991).

Here, Murphy primarily relies upon Lewis v. State, 591 So. 2d 922 (Fla. 1991) as authority the proffered evidence was admissible. In Lewis, the defendant, accused of sexual battery, "sought to develop as a defense theory that the victim, his stepdaughter, fabricated the charges against him in order to prevent her mother and [him] from discovering . . . that she was sexually active with her boyfriend." Id. at 923. The proffered evidence established the victim had been placed on restriction because Lewis and her mother found some letters, containing sexually explicit language and desires, she had written to her boyfriend. Id. Her mother and Lewis then scheduled the victim for an appointment to see a gynecologist. Id. Seven days prior to the consultation, she accused Lewis of rape. Id.

Lewis asserted the victim manufactured the accusation to conceal she was involved in a consensual sexual relationship with her boyfriend. Id. Thus, he argued, her prior sexual activity with her boyfriend had to be

9

admitted under the Sixth Amendment right to confrontation through full and fair cross-examination.  Id.  Finding that where the application of the general rule of relevancy "interferes with confrontation rights, or otherwise precludes a defendant from presenting a full and fair defense, the rule must give way to the defendant's constitutional rights," the Florida Supreme Court agreed.  Id. at 925 (citations omitted).

The holding in Lewis, however, cannot be viewed in isolation.  In a later decision, Pantoja v. State, 59 So. 3d 1092 (Fla. 2011), the court addressed the admissibility of evidence of a prior false accusation in a sexual battery prosecution.  There, relying upon a false reporting exception to the criminal conviction requirement in section 90.610, Florida Statutes and the Confrontation Clause, Pantoja sought to elicit testimony the alleged victim had previously falsely accused her uncle of molesting her.  Pantoja, 59 So. 3d at 1096; see § 90.610(1)(b), Fla. Stat. ("A party may attack the credibility of any witness . . . by evidence that the witness has been *convicted* of a crime . . . involv[ing] dishonesty or a false statement . . . Evidence of juvenile adjudications are inadmissible under this subsection.") (emphasis added).  The victim denied recanting or fabricating the earlier incident and had not been charged with filing a false police report.  Pantoja, 59 So. 3d at 1095.  A plurality of the court determined section 90.610 "does not permit an

10

exception to the conviction requirement for prior false accusations" and "[t]he only proper inquiry," in such circumstances "goes to the witness's reputation for truth and veracity." Id. at 1096-97 (citation omitted).

The court then examined whether the exclusion of the proffered evidence gave rise to a Confrontation Clause violation. Id. at 1098. Citing an excerpt from the lower court opinion referencing Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974) and its progeny, a plurality distinguished between general attacks on credibility, such as the introduction of a prior crime, and particular attacks on credibility designed to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Id. at 1099. Concluding evidence of a false prior accusation constitutes a general attack on credibility, the court found where such evidence has minimal probative value, it may be excluded without running afoul of the Confrontation Clause. Id.

More recently, in McPhee v. State, 117 So. 3d 1137 (Fla. 3d DCA 2012), our court considered whether the trial court erred in disallowing evidence of the alleged victim's prior false allegations of prior sexual abuse in a sexual crime case. Citing Pantoja and section 90.405(2), Florida Statutes, the court held "the victim's character was not an essential element

11

of the defense or charge," thus, exclusion of the specific act evidence was proper. McPhee, 117 So. 3d at 1139. Against this jurisprudential background, we examine the contention of error in the instant case.

We first observe the evidentiary proffer below is not fully supported by the scant record before us. Although Murphy contended the victim changed her statement to law enforcement after her initial report, in her deposition, she steadfastly maintained the prior assault had indeed occurred. Further, she was neither charged with, nor convicted of, filing a false police report. Extrinsic impeachment evidence was not adduced at the deposition or otherwise placed in the record.

Consequently, as in Pantoja, conspicuously missing from this quagmire was any confirmatory proof the victim fabricated or recanted the previous incident. Because the record was further devoid of any showing the victim had a boyfriend at the time of this incident, the proffered theory necessarily required a pyramiding of inferences.[2]

Even accepting the proffer as capable of proof, contrary to the facts in Lewis, here, there was no nexus or similarity between the two reported crimes. Instead, as in Pantoja, the two allegations involved different men

---

[2] The victim testified at trial she broke up with her boyfriend a month or two before the sexual battery.

12

and disparate circumstances, temporally separated from one another.  In the former allegation, the victim accused a stranger of groping her in a public restroom.  In contrast, the evidence at trial in the instant case established that an acquaintance vaginally penetrated her in a private residence.  The victim was thirteen years old when she filed the initial report and nineteen at time of the instant rape.

Given these marked dissimilarities and lack of logical connection, the only value in admitting the proffered evidence would have been to establish that because the victim lied previously, she was more likely to have lied in the instant case.  Because her "character was not an essential element of the defense or charge," this type of specific act character evidence has been soundly condemned by bedrock evidentiary principles.  McPhee, 117 So. 3d at 1139; see § 90.404(1), Fla. Stat. ("Evidence of a person's character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion."); Fernandez v. State, 730 So. 2d 277, 282 (Fla. 1999) ("[E]vidence of particular acts of ethical misconduct cannot be introduced to impeach the credibility of a witness.  The only proper inquiry into a witness's character for impeachment purposes goes to the witness's reputation for truth and veracity.") (citation omitted).

Finally, here, unlike in <u>Lewis</u>, Murphy was free to cross-examine the victim with the object of revealing any possible ulterior motive or bias or to further adduce reputation evidence.[3]  Hence, he was not precluded from developing his theory the victim inculpated him in a sexual crime in order to conceal a consensual act of intimacy from her boyfriend.

Under these circumstances, we conclude the probative force of the proffered evidence was attenuated and the risk of undue prejudice high. Consequently, the ruling below was properly tailored to prevent the "sideshow" from "tak[ing] over the circus," Robert P. Mosteller, et al., McCormick on Evidence, § 39 (8th ed. 2020), and Murphy was not "categorically prevented from offering types of evidence that other criminal defendants may offer."  Tanford & Bocchino, <u>supra</u> at 545.  Thus, the exclusion of the prior incident did not give rise to a Confrontation Clause violation, and we affirm.

Affirmed.

---

[3] At trial, Murphy pursued a different theory of defense.  He argued the victim invented the rape because she grew envious after learning he was in a committed relationship with another woman.